Viall *v*. Hubbard.

---

ASA B. VIALL *v*. HARVEY B. HUBBARD.

*Contract.    Variance.*

By the contract the plaintiff was to furnish a monument of "good white marble." He did furnish a monument of which the material was "good white marble," but it had a discoloration on it, gotten there by accident, but temporary in character, and by lapse of time and by exposure to the open air and frost would disappear. *Held*, that the contract was not complied with, and the plaintiff was justified in refusing to accept the monument.

The substitution of "Octavia J." for "Octavia Jane," was also a substantial defect, although made by the marble worker in good faith, believing the inscription as he made it would look better and be more satisfactory.

The facts reported do not constitute an acceptance of the monument.

BOOK ACCOUNT. The auditor reported that the plaintiff's account consisted of one item of $25. for a marble scroll.

It appeared that the defendant and his wife called at the plaintiff's shop to purchase a grave stone or monument for their daughter, a girl of about seven years of age, who had recently died. At that time there was a marble stone in the shop called a scroll, finished for another man, and which the defendant was, to some extent, satisfied with, and directed to have his finished like it. It also appeared that the defendant directed the plaintiff to make it of good white marble, and that he expressed a good deal of anxiety to have it a good one. The price agreed upon was $25. The scroll was completed ready to be set within the time when by the contract of the parties it was to

be done, and the plaintiff offered to take it to the grave and set it, but the defendant refused to accept the scroll and forbid his setting it, for the alleged reason that it was not made according to the contract.

The auditor found that the stone was of as good a quality as the plaintiff contracted to furnish, unless a stain or discoloration on the lower part of it should make it otherwise. There was a blemish upon it, on which a part of the letters of the inscription were cut, which appeared to have been caused by the stone, before being wrought, lying upon some substance which colored it, and which, to some extent, disfigured it. This color was upon the surface, and the auditor found that it would disappear after the stone had been set in the open air, and exposed to the frost; and that therefore, there was no failure on the part of the plaintiff in fulfilling his contract in this respect, unless, as matter of law, the temporary discoloration of the stone, and the consequent temporary disfiguration was a failure.

The name of the girl for whom the stone was designed was *Octavia Jane*, and, at the time of contracting for the stone, the plaintiff was directed to put that name upon the shield, or raised place, in the stone; but upon working and finishing the stone, it was found that there was not room enough for the whole of both names, without putting one name over the other, and the plaintiff therefore inscribed the name " Octavia J." instead of " Octavia Jane."

The plaintiff in making this variation acted in good faith, believing that the inscription as he made it would look better and be more satisfactory than with both names at length, and one over the other. The contract was made in November, and the next spring, after the stone was finished, the defendant sent his wife to see the stone, and to see whether it was satisfactory, and at this time, the subject of the manner of putting on the name was talked about, and the plaintiff then explained to her the reason why he had put on "Octavia J." instead of " Octavia Jane," and she then expressed herself satisfied with it as it was. This was about the 2d day of May, 1863.

The full name, " Octavia Jane," did appear upon the other side of the stone, where also appeared the names of the defendant and his wife, as the parents of the said " Octavia Jane."

There was also some talk on this occasion about having a wreath or sprig under the name, but it was finally decided not to have it.

The plaintiff then offered to set the stone, but Mrs. Hubbard chose not to have it done until her husband could come and see to it.

The plaintiff claimed that the stone after it was finished was accepted by the wife of the defendant, who was sent there by the defendant, and who acted as his agent.

Before leaving the shop on the said 2d day of May, Mrs. Hubbard informed the plaintiff that she had the money to pay him, and offered to pay him a part of it, but the plaintiff said it would be be just as well to wait and pay it all together, and upon that she left and returned home.

On the 27th day of May the defendant came to the plaintiff's shop, and saw the stone, and expressed himself dissatisfied with it, and refused to take it, and the stone still remains in the plaintiff's shop, where it was when the wife of the defendant saw it on the 2d day of May, and has not been paid for.

The court rendered judgment on the auditor's report for the plaintiff,—to which the defendant excepted.

*W. C. French*, for the defendant.

I.  The " *discoloration* " upon the stone is such an imperfection as will excuse the defendant from taking it.

II.  The stone was not finished according to the contract, in omitting the word " Jane " upon the shield.

III.  This action of book account cannot be maintained.  The plaintiff was to *make and set* the stone.  He *made it, but the defendant declined to accept it and it has always remained in the plaintiff's shop.* The contract is still *executory.  Read* v. *Barlow*, 1 Aik. 145 ; 1 Vt. 97 ; *Bundy et al* v. *Ayer*, 18 Vt. 497.

*Hutchinson & Rowell*, for the plaintiff.

The stone after it was finished was accepted by the wife of the defendant, when sent there by the defendant, acting as his agent, and she expressed herself satisfied with the stone and offered to pay a part of the price, on the 2d day of May, 1863.

The acts of the wife are binding on the husband, so far as she acts as his agent.  *Gray* v. *Otis*, 11 Vt. 628.

This is in reality a charge for materials furnished and labor performed by the plaintiff, at the special instance and request of the defendant, and differs from the mere sale of goods already finished and

Viall *v.* Hubbard.

on hand. Again, we claim a distinction in cases where the produce of the plaintiff's labor could or could not be returned to him. In a case like the present, to hold that the defendant is not liable, would be to enable him to practice a fraud on the plaintiff, leaving the property on his hands, of no value to any one but the defendant. One promise should be held a good consideration for another, and we think we have a right to rely upon *Mattison* v. *Wescott*, 13 Vt. 258; *Downer* v. *Sinclair et al.*, 15 Vt. 495; Addison on Contracts, p. 243.

Book account is the proper form of action. The title to the scroll passed to the defendant. *Mattison* v. *Wescott*, 13 Vt. 258; *Carpenter* v. *Dole*, 13 Vt. 578; *Paddock et al.* v. *Ames*, 14 Vt. 515; *Bundy et al.* v. *Ayer*, 18 Vt. 497; Addison on Contracts, 221; *Hinde* v. *White-house*, 7 East, 558; *Carruthers* v. *Payne*, 2 M. and P. 441; *Wilkins* v. *Bromhead*, 46 Eng. Com. L. 962.

There was a sufficient delivery. *Chamberlian et al.* v. *Farr*, 23 Vt. 265; *Jewett* v. *Warren*, 12 Mass. 300; 2 Kent's Com. 500.

ALDIS, J. By the contract the plaintiff was to furnish a monument of " good white marble." He did furnish a monument of which the material was "good white marble,"—but it had a blemish, " a discoloration " on it, across which a part of the inscription was wrought. The auditor finds that this stain was not naturally in the marble—had gotten upon it by some accident—was temporary, and by lapse of time and exposure to the open air and frost would disappear. The plaintiff claims that such a discoloration is not a variance from the contract—that he has substantially furnished just such a monument as he agreed to, and can recover the price. The defendant insists that such a stone is not a compliance with the contract and that he was justified in refusing to accept it.

We think the discoloration a material defect, and the defendant fully justified, for that reason, in refusing to accept the monument.

He was entitled to " good white marble,"—not to " good white marble with a stain on it ;" and he was entitled to such a monument at the time of delivery. He was not bound to wait an indefinite period for the air and the frost to bleach the stained spot. He had a right to just such an article as he bargained for at the time he was to receive and pay for it.

There is no kind of a contract in which the purchaser has the

right to have his wishes and instructions more strictly and literally observed than this of the manufacture and erection of a monument to the departed. It is not a matter of trade and profit—nor of taste alone. It is a matter of sentiment and feeling. Such a monument embodies the love and tenderness of the parents toward their deceased child. It is a memorial to perpetuate the purity, the goodness, the virtues of the departed; sometimes to recall tender associations and cherished recollections known only to the survivors; sometimes to conform to the expressed wishes of the deceased—a sacred obligation; sometimes an emblem of the deceased person's character and hope of immortality. To erect such a memorial is always the last office of affection,—all that is left for the parent to do, and all that he can do (however inadequate it may seem) to show his love for and to preserve the memory of his deceased child. These natural sentiments of the heart are to be religiously respected. The wishes and directions of the parent have their sources in sentiments that can stand no questioning from others, and are not to be discussed. "A stranger intermeddleth not therewith."

In the case at bar the parents may well have felt that pure white marble was the only appropriate emblem for the spotless purity of their departed child. Discolor it—stain it with a blemish, and the whole meaning of the memorial for them is destroyed. They would feel it a wrong to the memory of their child to erect such a monument.

So, too, in regard to the name—the substitution of "Octavia J." for "Octavia Jane" we deem a substantial defect. The familliar name of the child,—that used in the family, and endeared by many recollections was not there. The parents had the right to have the inscriptions sculptured on the marble literally and exactly as they had directed, and as the plaintiff had agreed.

For such defects it is no answer to say, as the auditor finds—that the marble-worker acted in good faith—that he believed the inscription as he made it would look better, and be more satisfactory. It was his simple duty, where the instructions were exact and specific, to follow them.

It is claimed that the defendant, by his wife, accepted the monument. If so, he should pay for it. But the auditor does not so

find the fact. Some of the facts reported strongly tend to show an acceptance—some the contrary. If the facts reported amounted in law to an acceptance we should so treat it, though not expressly so found by the auditor. But taken all together they do not. The report gives us a lively picture of a lady much perplexed between her own wishes drawing her in one direction, and the solicitations and arguments of others by whom she was surrounded impelling her in the other. The result of the whole seems to have been, that she got away from the discussion, substantially deferring a decision till her husband could come and see the work.

As this decision settles the controversy upon its merits, we need not consider the question as to the form of action.

Judgment reversed, and judgment for the defendant for his costs.