PETER McGUIRE v. J. NEILS LUMBER COMPANY.[1]

February 16, 1906.

Nos. 14,598—(163).

**Breach of Contract.**

A contract may be broken in any one of three ways: A party to it may renounce his liability under it, may by his own act make it impossible that he should fulfil its obligations, or may totally or partially fail to perform what he has promised.

**Rescission.**

The renunciation of a contract requires both intention to abandon it and external action so to do.

**Performance.**

Performance of a contract is such a thorough fulfilment of its duties as puts an end to its obligations by leaving nothing more to be done.

**Same.**

An ordinary contract to do certain work, as floating, driving, and sorting logs, entitles the party for whom that work is to be done only to full beneficial performance through the other party, not to personal performance by that other party individually, when no question as to unpaid charges arises.

[1]Reported in 107 N. W. 130.

**Same—Assistance Given.**

Gratuitous assistance in such beneficial performance incidentally rendered by the collateral act of the party for whom the work is to be done, which renders it unnecessary for the other party to incur certain expense and to perform certain labor, does not constitute a breach of that contract, nor compel the party performing to resort to an action for damages nor deprive him of his right to recover for the entire contract price.

**Sorting Logs.**

In this case plaintiff, by a first contract, undertook to drive and deliver certain logs, clean and separate from logs of other parties; and, by a second, to float, drive, and sort in separate booms other logs bearing given marks. The trial court properly held on evidence that to "sort" meant to separate the logs, and that the causes of action arising on the contracts were practically identical as to what was to be done under each.

**Beneficial Performance.**

After the execution of the second contract, and upon its completion, defendant bought all logs with which the logs specified by marks in that contract were commingled, and after plaintiff had sorted some of the logs by such marks in booms the defendant notified him not to sort any more. It is *held* that this was a case of gratuitously assisted and beneficial performance, not of substituted performance, nor of renunciation, nor of impossibility or failure of performance. The defendant received what he contracted for, the plaintiff did what he was required to do, and he was entitled to recover the contract price.

Action in the district court for Cass county to recover $2,379.99 and interest, being an alleged balance due for driving and sorting logs. The complaint set up three causes of action, the first and third being based upon written contracts. The case was tried before McClenahan, J., and a jury, which rendered a verdict in favor of plaintiff for $2,318.-99. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, defendant appealed. Affirmed.

*Reynolds & Roeser,* for appellant.

*Chester McKusick,* for respondent.

JAGGARD, J.

This action was tried on the theory that the plaintiff and respondent had fully and completely performed two certain contracts with the defendant and appellant for the driving and separating of certain logs in the Mississippi river and certain lakes through which that river

runs. This appeal has to do only with the first and third causes of action set forth in the complaint. The first cause of action was upon a contract, whereby the plaintiff undertook to take possession of the logs therein referred to and drive and deliver them clean and separate from other parties' logs in booms in accordance with the details of the contract. The third cause of action was upon a contract whereby the plaintiff agreed to float, drive, and sort in separate booms, at a named place, all the logs bearing certain marks therein set forth, for which the defendant agreed to pay the sum of fifty eight cents a thousand, in the following manner: twenty five cents per thousand when the logs were driven below a certain point, and the balance, thirty three cents a thousand feet, when the logs were assorted and boomed, according to this contract. The undisputed evidence showed that at the time of the execution of the last-named contract there were lying along the banks of the river and lakes a large mass of intermingled logs, bearing different bark and stamp marks, which belonged to a number of persons other than the defendant. Soon after the execution of that contract defendant purchased all of these logs. After the plaintiff had floated and driven the contract logs, and sorted some of them into booms, defendant notified him not to sort any more. This suit was brought for the full consideration of the contract. The jury found for the plaintiff in the sum of $2,318.99.

First. On cross-examination of the plaintiff by the defendant he had testified, in answer to many dexterously put questions, in effect that to "sort" logs meant to separate logs bearing marks of the owner in question from the general mass of logs belonging to other persons. On redirect examination he was asked:

> The object of sorting logs is that they may be placed ready for sawing without being mingled with the logs of anybody else —that is the object of sorting logs?

This was objected to as incompetent, irrelevant, and immaterial, and not redirect examination. The objection was overruled, and the witness answered:

> To get the man's logs, his own logs together, to get each man's logs by themselves.

It was conceded here that the term "sorting logs" was a proper subject of expert testimony. Accordingly, while the question was improper in form, the result of the testimony was not prejudicial to the defendant. The ruling, if erroneous at all, did not amount to reversible error, apart from the insufficiency of the general objection to raise the question. Graves v. Bonness, supra, page 278. Nor was there any abuse of discretion on the part of the trial court in permitting the question upon redirect examination. The trial court properly sustained plaintiff's objection, "The contract speaks for itself," to defendant's question, asked of the plaintiff, whether he expected to sort and separate all the different batches of logs. This question was not designed to show the circumstances surrounding the execution of the contract, nor to relieve the contract from any ambiguity which it might contain. The mental expectation of the witness was not a surrounding circumstance.

Second. The portions of the charge which are assigned as error concerned, in the first place, a treatment of the first and third causes of action as practically identical, and, in the second place, the construction by the court that "sorting" meant that the plaintiff was obliged to separate all logs belonging to other parties from the logs belonging to the defendant, and not that he was obliged to separate the "marks"; that is,

> That, if the plaintiff separated the logs of the defendant from the logs of all other persons· at the booms * * *, he has fulfilled his contract, otherwise not.

The defendant insists that there were only two theories upon which the plaintiff could have recovered, namely, (a) that the defendant, having purchased all the logs with which its logs were mixed and intermingled, such purchase worked an abandonment of the contract, and the plaintiff would be entitled to recover as upon a new contract the reasonable value of the services performed by him; or (b) that plaintiff could have sued upon his contract for the labor actually performed thereunder, and his measure of damages would have been the contract price less the cost of sorting the logs. Inasmuch as no evidence was introduced by plaintiff tending to support either basis of damage, which was the fact, it argues, plaintiff cannot recover.

The trial court correctly construed the contracts and applied to them appropriate rules of law. In interpreting the contract upon which the third cause of action is based, defendant's contention may be conceded, viz., that the court must ascertain from the contract itself and from the surrounding circumstances what the parties intended by the words used, and what the understanding was at the time the contract was made. While in many cases a court may also construe a contract in the light of the subsequent conduct of the parties, it is not necessary to apply that rule in this case to justify the learned trial judge. Without any reference to what defendant did in connection with his purchase of logs, it is evident from the testimony as to the meaning of the word "sorting" that the two contracts were substantially identical as to what was to be done under each.

The question then remains whether the plaintiff can recover for performance of the contract or is driven to an action for damages as for its breach. The defendant, in support of his contention that there was no proof sufficient to recover damages for a breach of the contract, cites a number of cases, applying in greater or less detail the familiar rules for damages laid down in Hadley v. Baxendale, 9 Exch. 341. None of them bear any particular resemblance to this case, except Glaspie v. Glassow, 28 Minn. 158, 9 N. W. 669. There the plaintiff, who had contracted to drive certain logs described by marks to a given boom, brought an action to recover the contract price, alleging full performance. The defendant denied performance, and claimed that he had driven the larger part of the logs himself, and had paid the men for doing the work. This defense was sustained by the evidence. Gilfillan, C. J., held: "The case is therefore one where the plaintiff was prevented by the defendant without just cause from fully performing his contract." He accordingly applied the proper rule of damages for breach of a contract.

In the case at bar, however, there was no breach of contract, except defendant's refusal to pay. It is elementary that a contract may be broken in any one of three ways: A party to it may (1) renounce his liability under it; (2) may by his own act make it impossible that he should fulfil its obligations; (3) may totally or partially fail to perform what he has promised. Anson, Cont. 280; Clark, Cont. 443.

1. The renunciation of a contract requires both intention to abandon it and the external action to do so. Livermore v. White, 74 Me. 452, 455, 43 Am. Rep. 600; Read v. Robinson, 6 Watts & S. 329, 333; Codding v. Newman, 3 Thomp. & C. (N. Y.) 364, 365. The plaintiff did nothing from which such an intent could properly be inferred, nor did the defendant. The plaintiff intended to and did everything possible to execute it. Defendant's purchase of the other logs was a matter entirely collateral to this contract. It evidenced no intention to repudiate the contract and involved no external action to do so. It did not directly nor necessarily affect plaintiff's obligation at all. Defendant might have sold all the logs so purchased and plaintiff could not have objected, nor would he have been at all affected prejudicially, or otherwise, by the transactions. Neither the actual purchase nor such hypothetical sale would necessarily have interfered with his possession of the logs with which he had to do. The change of ownership in the logs purchased involved absolutely no dominion over the logs covered by the contract and was entirely consistent with plaintiff's contract as to the logs contemplated by it, and, as will presently appear, with its full performance.

2. The plaintiff obviously did nothing to make it impossible to fulfil all the obligations of his contract, nor did the defendant. It is true that, as a purely incidental result of the defendant's purchase, he thereby rendered it unnecessary for the plaintiff to do certain manual labor; but that did not prevent the execution of all that was required by the contract. On the contrary, so far from hindering the work, defendant's conduct incidentally, but effectively, aided in its literal and substantial performance. In Glaspie v. Glassow, supra, on the contrary, the defendant, by driving the logs which the contract required plaintiff to drive, made performance by plaintiff of the contract impossible.

3. The plaintiff performed all that he was required to do under the terms of the contract. "Performance is, as the term implies, such a thorough fulfilment of a duty as puts an end to obligations by leaving nothing more to be done." Hare, Cont. 569. The plaintiff did three things: (1) He floated the logs; (2) he drove them; (3) he delivered them so that they were not intermingled with the logs of any other person, and so that they were, within the technical meaning of the contract, "sorted." He did all he contracted to do. The defendant re-

ceived all that it contracted for. Moreover, after the plaintiff had sorted some of the logs bearing the contract marks into separate booms, defendant notified him not to proceed further with that work. The effect which should be given this notice is not that it tended to show what is meant by the term "sorting" when the contract was entered into, nor to be the basis of waiver of nonperformance of an essential part of the contract, which was not pleaded, nor to prevent the final fulfilment of plaintiff's obligation. On the contrary, it tended to show an acceptance by the defendant. The acceptance of an article contracted for is a receipt thereof by the appropriate party to a contract with the intent of retaining the same, indicated by some act or work sufficient for that purpose. Schmidt v. Thomas, 75 Wis. 529, 532, 44 N. W. 771.

The defendant in effect received the full beneficial performance of the contract. He was not entitled to personal performance by the plaintiff himself. See cases collected 11 Cent. Dig. col. 1514, § 1251½. It was immaterial whether the plaintiff sublet the contract or did the work by other contractors wholly, or whether he did the work himself, or whether he received gratuitous assistance from natural agencies, from third persons, or from the defendant himself. The contract did not require that the work should have been done at plaintiff's expense, so long as no charge accrued against the logs of the defendant, nor that plaintiff should go through specified mechanical operations. The plaintiff did undertake to deliver logs, at the place named, separated from the logs belonging to other persons. Such logs the defendant received. The performance was not substituted as in Draper v. Randolph, 4 Har. 454; Halpin v. Manny, 33 Mo. App. 388; Foster v. City of Joliet (C. C.) 27 Fed. 899; Viall v. Hubbard, 37 Vt. 114; but assisted. There was no default in quality, quantity, time, or place. The defendant could not complain that plaintiff had failed to do certain work which would have been necessary had it not been for defendant's own conduct.

The situation is much the same as if defendant, or some one else, had opened a dam, so that by an inundation of the banks the operation of putting the logs afloat would have been done accidently with decreased expense to the plaintiff, or as if in driving the logs, while they were under the plaintiff's control, such flood had created a current through some of the lakes and had carried the logs by that current and had obviated the necessity on plaintiff's part of employing a steamboat, as he

did in fact, to carry them through. In such cases the legal aspect of the case would have been the same as if a water spout, or other natural agency, had rendered the plaintiff similar assistance.

The case of Glaspie v. Glassow, supra, would have been in point if the defendant here had taken possession of the particular logs involved in this contract, and asserted dominion of ownership over them by putting men paid by himself to sort them. The time for the defendant to have secured a reduction in the contract price because of the saving of labor to the plaintiff with respect to sorting logs was before the other logs were purchased; the manner, by a new agreement, determining the decrease in the contract consideration. No such new agreement was in fact made. The consideration of the actual contract was entire. The plaintiff was not to be paid twenty five cents for driving or thirty three cents for assorting, but fifty eight cents in two instalments, namely, one when the logs were driven below a certain place, and the remainder when the logs were finally assorted and boomed.

This is one of the cases in which a party for whom another is doing work, as for example, upon the construction of buildings or bridges, is held responsible for the full contract price, although he, by his own conduct, directly affects and alters the labor and expenses involved in the performance of the contract by the contractor according to its terms. Manville v. McCoy, 3 Ind. 148; McKee v. Brandon, 2 Scam. 339; McLane v. De Leyer, 56 N. Y. 619; Robinson v. Baird, 165 Pa. St. 505, 30 Atl. 1010; Board v. O'Connor, 137 Ind. 622, 35 N. E. 1006, 37 N. E. 16. This case is, however, sui generis. No specific authority has been found which aids much in its determination. There is some analogy between the principles it involves and those applied in Walsh v. Hyatt, 74 App. Div. 20, 77 N. Y. Supp. 8; and in Tweedie v. McDonald (D. C.) 114 Fed. 985.

Order affirmed.