EDWARD A. SCHMIDT v. GEORGE McKENZIE, JR.
AND OTHERS.
F. C. WESTERMAN, RESPONDENT.[1]

April 9, 1943.

No. 33,364.

*Stacker & Stacker* and *W. F. & W. B. Odell,* for appellant.

*Fowler, Youngquist, Furber, Taney & Johnson, Ralph H. Comaford,* and *Streissguth & Gislason,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from a judgment entered pursuant to an order granting defendant Westerman's motion "for judgment of dismissal on the merits" of plaintiff's cause upon the pleadings.

His complaint alleges that on November 29, 1939, Engesser Brewing Company borrowed $10,000 from him and on that date executed its corporate note, of which the following is a copy:

"St. Peter, Minn. November 29, 1939

"One year after date, for value received, I promise to pay to the order of Edward A. Schmidt

"Payable at the First National Bank of St. Peter, St. Peter, Minnesota,

"Ten thousand and no/100 ........................Dollars with interest thereon from maturity until fully paid, at the rate of 6 per cent per annum, interest payable annually.

"Upon any default in the payment of interest, this note shall become immediately due and payable at the option of the holder thereof.

"The makers, endorsers, sureties and guarantors hereof hereby severally agree to pay all costs of collection, or a reasonable attorneys' fees, in case payment shall not be made at maturity, and severally waive presentment for payment, notice of non-payment, protest and notice of protest and diligence in enforcing payment or bringing suit against any party hereto. The endorsers, sureties and guarantors hereof hereby severally consent that the time of payment may be extended, or this note renewed, from time to time without notice to them and without affecting their liability hereon.

*"Payable according*        Engesser Brewing Company
*to terms of contract*       By Geo. McKenzie Jr. Pres.
*bearing even date herewith.*    W. H. McKenzie Secy.
[Italics supplied.]        H. L. Barger Treas."

At the same time the individual defendants, including Westerman, signed the following guaranty upon the back of the note:

"For value received, I hereby guarantee the payment of the within note at maturity or at any time thereafter, and hereby agree and consent to all the stipulations contained therein."

The brewing company was not made a party to this action, which is one to recover upon the quoted contract of guaranty. Only Westerman has appeared, and his defense alone is involved. We shall hereafter refer to him as defendant and to the brewing company as the company.

Attached to the complaint "and specifically made a part" of it (exhibit A) is a copy of "the contract referred to on the face of the note." It recites as a preamble that the company "now has a considerable volume of sales" of its beer in "St. Paul and suburbs," delivery of which "is quite expensive from its warehouse" in North

Minneapolis to its customers in the St. Paul area, and that, since "both parties believe it will be" mutually "advantageous and profitable * * * to appoint" plaintiff "its distributor for said territory because of his location in the heart of said ·[St. Paul] territory and his facilities for not only selling the said beer but for delivering the same economically," therefore, "in consideration" of one dollar and "other valuable consideration hereinafter referred to," the company "hereby appoints" plaintiff "its exclusive distributor" for its beer in St. Paul and South St. Paul and the suburbs of each. Plaintiff accepted the "appointment as such distributor * * * for the duration of one year." The agreed sale price to him was fixed at 88 cents per case of 24 pints, "which price shall not be altered for one year." Also, as a matter of right, he was given the option "to renew this franchise for another two years at the expiration of the one covered by this contract, and on the same basis and on the same terms, except that no further deposit of ten thousand dollars or any amount [shall] be required."

"As part of the consideration for the appointment," plaintiff "as the distributor for" the company "in the said territory and the turning over to him of an already established trade on said beer, * * * does hereby agree to advance, and does advance and loan to the said first party [the company], the sum of Ten Thousand Dollars, receipt whereof is hereby acknowledged, and for which amount said first party has executed to said second party [plaintiff] its promissory note with acceptable signers and endorsers bearing even date herewith, and due one year after date, with interest, at the rate of six per cent per annum after maturity. *It is agreed between the parties hereto that the said note is to be paid and retired by the first party furnishing and supplying beer to the said party of the second part on the following basis: Commencing May 1st, 1940, said second party shall pay the said first party only one-half of the amount of such load of beer* and cases, less empties, *instead of the full amount* until such date as

is stipulated, *for such length of time as is necessary to pay and retire said note and loan in full,* it being the agreement and understanding between the parties hereto that this franchise and the turning over of the established business of said first party is to cost and stand the said second party nothing except the interest on the money while same is being used by said first party. The note when paid in full shall be cancelled and returned to said first party, the franchise and relationship to continue in accordance with the Agreement.

"Said party of the first part is to make every effort at all times to furnish said second party with his full requirements for beer, and guarantee to furnish up to 500 cases per day, if needed, and said second party is to use every effort to purchase and sell a minimum of 300 cases per week at all times."

Westerman's answer admits that he signed the pleaded guaranty, also that the contract attached to the complaint is a "correct copy" of the one referred to on the face of the note. In avoidance he pleaded that the contract "was not performed by the plaintiff in accordance with the terms thereof," in that "between May 1, 1940, and October 11, 1940," the company "did furnish, supply and deliver to plaintiff beer amounting, at the contract price, to $26,719.68, * * * one-half of which amount (or so much thereof as was necessary) plaintiff, by the terms of said contract, note and guaranty should have applied but did not apply to the payment of said note," and "that if one-half of said amount had been so applied by the plaintiff, said note would have been paid in full."

In his reply plaintiff "admits that between May 1, 1940, and October 11, 1940, the Engesser Brewing Company did furnish, supply and deliver to plaintiff beer amounting, at the contract price, to $26,719.68 * * * *and in that connection he avers that said Brewing Company did not furnish and supply said beer on the basis set out in said contract, and refused to supply said beer on the basis set out in said contract, and it was stipulated and agreed*

*between said Brewing Company and plaintiff on, to-wit, May 1, 1940, that said Brewing Company could not furnish and supply beer on the basis set out in the quoted portion of said contract, and plaintiff admits that he paid said Brewing Company in full for the beer so furnished and delivered."* (Italics supplied.)

Defendant's position is that upon the pleadings there are no fact issues to be determined; that the only issue is one of law, as to whether he, as guarantor, was released by plaintiff's and the company's mutual stipulation set forth in the reply. He emphasizes that, since there is no allegation that he was a party to the stipulation and agreement made May 1, 1940, and since this change amounted to a new arrangement between the original parties as to the time and manner of payment of the debt, which is the only thing to which his contract of guaranty applies, therefore he has, as a matter of law, "been discharged of all liability upon said note and guarantee."

■ A guaranty has been defined as "a collateral contract to answer for the payment of a debt or the performance of a duty in case of the default of another who is primarily liable to pay or perform the same." 3 Dunnell, Dig. & Supp. § 4068.

■ The distinction between the undertaking of a surety and that of a guarantor is that the surety's obligation is a primary one, while that of the guarantor is collateral and secondary. *Id.* § 4069. The distinction stated is generally accepted by the courts, here and elsewhere, as will be seen by reference to 24 Am. Jur., Guaranty, pp. 874, 875, §§ 3 and 4. The author under § 4 states the rule in this form:

"A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor. If a primary or principal obligation does not exist, there cannot be a contract of guaranty. 'To constitute a guaranty, there must be a principal debtor or obligor. Without a principal debt there can be no guaranty.'

"The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral."

In Howell v. Commr. of Internal Revenue (8 Cir.) 69 F. (2d) 447, 450, par. [1], Judge Sanborn carefully and ably distinguishes guaranty, suretyship, and indemnity. Arant, Suretyship, pp. 13 to 22, § 14, does likewise; and in 10 So. Cal. L. Rev. 371, *et seq.*, will be found an exhaustive treatment of this interesting but difficult problem. We refrain from further quotation, since the books to which we have referred are available to those who wish to make further investigation.

■ It is true, as said in J. R. Watkins Medical Co. v. McCall, 116 Minn. 389, 395, 133 N. W. 966, that in many instances a contract of guaranty so clearly resembles a contract of suretyship that the authorities, in determining the rights and liabilities of the parties, apply the same rules of law to both relations.

■ The primary obligation of paying the loan rested, of course, upon the company, whether defendant's obligation was that of a guarantor or a surety. It received plaintiff's money and promised to repay that sum and to retire the debt by furnishing its beer to plaintiff "for such length of time as is necessary" to accomplish that result. Specifically, its promise was that plaintiff should pay "only one-half of the amount" that each "load of beer" would cost at the stipulated price, and the remaining half should be applied upon the debt. That agreement was personal to the parties thereto, a matter to which defendant was not originally a party. His liability arose as and when he became a guarantor, and then only to the extent and within the limits specified in his guaranty. As admitted by plaintiff, he received from the company between May 1, 1940, and the due date of the debt more than a sufficient amount to retire the debt if the original agreement had been complied with.

The contract between plaintiff and the company, upon which defendant's liability must ultimately depend, contains many matters to which defendant was, and still remains, a total stranger. These, since not involved in defendant's guaranty, may as well be dismissed from our consideration of the case.

As to the time, manner, and means of paying the loan, the note itself directs us to go to the "contract bearing even date herewith." In obedience to that direction, we find that therein the company agreed to pay the debt by furnishing plaintiff with its beer "up to 500 cases per day, if needed," promising also that one-half of its agreed value should be applied upon its debt to plaintiff. And he in turn agreed "to use every effort to purchase and sell a minimum of 300 cases per week at all times." Plaintiff concedes:

"If the Brewing Company had sold beer to plaintiff on the contract terms and plaintiff then refused to apply the retained one-half of the price on the note, the guarantors would have had their remedy. The plaintiff could have been compelled to credit on the note and on the guarantee the amount of the price retained by him under the contract."

But, so far as consequences go, defendant's loss, if he is to be held responsible in this action, is as great as it would be if plaintiff's assumed facts were applicable. Here, as in contractual engagements generally, when plaintiff and the company entered into their agreement, each party thereto expected, and had a right to rely upon, complete and timely performance by the other party. That was the purpose and the sole reason for entering into it. Nor can it be doubted that defendant in his contract as a guarantor had the same rights. As to all these parties, the contractual terms bound each and all of them. Instead of compliance therewith and performance thereunder, plaintiff and the company on May 1, 1940, "stipulated and agreed" between themselves alone for what amounted to such (116 Minn. 395, 133 N. W. 968) a "material departure from the terms of the contract" as originally made, especially as applied to defendant's rights as a surety or guarantor,

as wholly to destroy its efficacy. That defendant was materially prejudiced thereby is undeniable.

Here, unlike plaintiff's situation in McGuire v. J. Neils Lbr. Co. 97 Minn. 293, 298, 107 N. W. 130, 132, plaintiff had not performed "all that he was required to do under the terms" of his contract. And here, as in that case, "performance is, as the term implies, such a thorough fulfilment of a duty as puts an end to obligations by leaving nothing more to be done." Consequently, as we held in the Watkins case, 116 Minn. 389, 395, 133 N. W. 968, the rule to be applied is that, "in contracts of guaranty, * * * any material departure from the terms of the contract between the guarantee" and the other party "will release the guarantor." (Citing authorities.)

Helpful, too, is Pioneer S. & L. Co. v. Freeburg, 59 Minn. 230, 61 N. W. 25, where plaintiff made a loan to Freeburg upon certain real estate. There was then under construction a building thereon. Defendant and his sureties gave plaintiff a bond to indemnify it against mechanics' liens that might be filed against the mortgaged property. In an action on the bond the sureties pleaded that plaintiff (59 Minn. 231, 61 N. W. 25) "had failed and refused to advance a considerable part of the money" to be furnished in the performance of the work, and for that reason plaintiff should not be allowed to recover damages in its action on the bond. In disposing of this issue the court said (59 Minn. 234, 61 N. W. 26):

"Then there is at least the sum of $270 which it [plaintiff] has retained out of the amount of the loan, and wrongfully applied, contrary to its contract. We are of the opinion that this constitutes a failure to perform—a violation of the contract—on plaintiff's part, by reason of which it is not entitled to recover against these guarantors. Such a contract of guaranty is *strictissimi juris*. *The plaintiff must perform strictly, or it cannot hold the guarantors.*" (Citing cases.) (Italics supplied.)

In other words, defendant had the right to "insist that he is bound to the extent, in manner, and under the circumstances pointed out in his obligation, and no further." Simonson v. Grant,

36 Minn. 439, 442, 31 N. W. 861, 862. Or, as said in Schoonover v. Osborne, 108 Iowa 453, 457, 458, 79 N. W. 263, 264:

"'* * * the guarantor has the right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself on the technical obligation: 'This is not my contract.'" Since a guarantor is "'* * * * bound by his agreement alone, * * * it is eminently just and proper that he should be a favorite of the law, and have a right to stand on the strict terms of his obligation. To charge him beyond its terms, or to permit it to be altered without his consent would be, not to enforce the contract made by him, but to make another for him.'"

The reason for the rule is stated in Stearns, Law of Suretyship (4 ed.) pp. 98, 99, § 72:

"(2) The contract as changed is not the same contract guaranteed by the promisor. The original contract has been put an end to and a new one substituted. The guarantor has never agreed to stand good for the latter, and *suretyship cannot be imposed without the express consent of the promisor,* and his execution of the original contract will not carry by implication any liability upon a substituted contract, although the latter is similar to the first." (Italics supplied.)

■ In his brief plaintiff asserts that his failure to apply the purchase price of beer upon his note "was not the result of his negligence," but solely due to the company's "breach of its agreement," and, as a consequence, he was required to make "payment in full in cash" for the beer delivered. The trouble with that claim is that by his own pleading he has failed to allege that the company "refused to deliver beer on other terms than payment in full in cash." Instead, he alleges that the company "did not furnish and supply said beer on the basis set out in said contract, * * * *and it was stipulated and agreed between said Brewing*

*Company and plaintiff* on, to-wit, May 1, 1940, *that said Brewing Company could not furnish and supply beer on the basis set out in the quoted portion of said contract."* (Italics supplied.) Nowhere in his pleadings is it alleged as a matter of fact that the company could not furnish or supply the beer, but merely that plaintiff and the company agreed that it could not. In other words, the new arrangement was one wholly between plaintiff and the company. Defendant is nowhere charged with knowledge of or consent to the change. Clearly, we think that in such circumstances defendant had the right to rely on the terms of the agreement as originally made. The absence of defendant's consent to the change or of timely notice to him of the company's refusal to perform can result only in disaster to plaintiff's cause. See Board of Co. Commrs. v. Greenleaf, 80 Minn. 242, 244, 83 N. W. 157, 158, where supporting cases are cited. That case has been followed and cited with approval in Dr. Ward's Medical Co. v. Wolleat, 160 Minn. 21, 25, 199 N. W. 738; Waltham State Bank v. Tuttle, 160 Minn. 250, 254, 199 N. W. 970; Martin v. Fee, 177 Minn. 592, 597, 226 N. W. 203. *Cf.* Reese v. United States, 76 U. S. (Wall.) 13, 19 L. ed. 541, 544; 50 C. J., Principal and Surety, p. 116, [§ 197] I; Barns v. Barrow, 61 N. Y. 39, 19 Am. R. 247.

Judgment affirmed.

