PREMIER BANK, Appellant,

v.

BECKER DEVELOPMENT, LLC,
et al., Respondents,

Nancy C. Buehler, et al., Respondents,

Pamela J. Noll, Respondent,

Bauerly Brothers, Inc., Respondent,

Kuechle Underground,
Inc., Respondent,

John Oliver & Associates,
Inc., Respondent,

and

Premier Bank, Appellant,

v.

Boone Builders, Incorporated,
et al., Respondents,

Kuechle Underground,
Inc., Respondent,

John Oliver & Associates, Inc.,
defendant and third party
plaintiff, Respondent,

v.

Boone Family Investments, LLC, et
al., third party defendants,
Respondents.

Nos. A08–1252, A08–1252A08–1700.

Court of Appeals of Minnesota.

June 30, 2009.

Thomas Atmore, Scott S. Payzant, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, MN; and Katherine M. Melander, Stephen F. Buterin, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for appellant.

Tammy L. Pust, Mark Kiperstin, Parker Rosen LLC, Minneapolis, MN, for respondent Pamela J. Noll.

Patrick B. Hennessy, Sarah E. Ruter, Best & Flanagan, LLP, Minneapolis, MN, for respondents Nancy U. Buehler and Robert G. Buehler.

Aaron A. Dean, Jesse R. Orman, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for respondent Kuechle Underground, Inc.

Lawrence P. Marofsky, Boulevard Plaza Office Suites, Brooklyn Center, MN, for respondents Becker Development, LLC, Boone Family Investments, LLC, Steven L. Boone, Annette C. Boone, Michale S. Uzelac, Deanna M. Lasser, Ann–Marie Rasmus, Daniel P. Boone.

Robert J. Feigh, Gray, Plant, Mooty, Mooty & Bennett, P.A., St. Cloud, MN, for respondent Bauerly Brothers, Inc.

David Spencer Holman, Burnsville, MN, for respondent John Oliver & Associates, Inc.

Considered and decided by MINGE, Presiding Judge; WORKE, Judge; and COLLINS, Judge.*

## OPINION

WORKE, Judge.

On appeal from the district court's grant of summary judgment in favor of respondents, the bank argues that the district court erred: (1) by dismissing the individual guarantors instead of reforming the guaranties; (2) by allowing the contractor to foreclose the entire blanket mechanic's lien against less than all of the property burdened by the lien; and (3) by failing to grant a decree of foreclosure to the bank for the lots as to which it is a junior lienholder. We affirm in part, reverse in part, and remand for an order consistent with this decision.

## FACTS

On September 8, 2005, appellant Premier Bank entered into a loan agreement with respondent Becker Development, LLC (Becker) whereby the bank agreed to lend Becker $3.2 million for overall site work necessary to develop 40 acres of land into a residential development. Becker ex-

ecuted and delivered to the bank a promissory note in the amount of $3.2 million. Becker and respondent Boone Family Investments, LLC (BFI) jointly executed a mortgage in favor of the bank in the amount of $3.2 million (development mortgage). The bank recorded the mortgage on September 9, 2005. As part of the loan documents, the bank also requested and received an entity guaranty signed by BFI listing Becker as the debtor. Individual guaranties were also executed by each of the various Boone family members who make up BFI. The individual guaranties listed BFI as the debtor.

On October 3, 2005, respondent Kuechle Underground, Inc. (Kuechle) began the first visible work on the project under an oral contract with Becker. Kuechle and Becker formalized their agreement in a written contract on April 20, 2006. Under the agreement, Kuechle was to serve as the general contractor responsible for the initial site, street, and sewer work for the development.

On February 13, 2006, the bank entered into three construction-loan agreements with respondent Boone Builders, Inc. (Boone Builders) to build three model homes, each of which was secured by a separate mortgage. The bank recorded one mortgage on February 28, 2006, and the other two on April 21, 2006. On October 10, 2006, the bank, Becker, and Boone Builders entered into a loan-modification agreement. Under this agreement, the bank released from its development mortgage the three lots Boone Builders had mortgaged. The loan-modification agreement also extended the maturity date for repayment of the note to September 8, 2007.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

On February 14, 2007, Kuechle served and filed a blanket mechanic's lien claim for the remaining balance of $266,622.96, for work performed on the lots that were part of the first phase of the development. The parties do not dispute that Kuechle was not paid its last draw or that Kuechle perfected its mechanic's lien.

Between January and September 2007, Becker failed to make the monthly installment payments due under the promissory note and failed to pay the real-estate taxes and penalties due for the first half of 2007. The bank demanded that the default be cured, but Becker was unable to do so. During this same period, Boone Builders failed to make the payments on the construction loans as they matured and failed to pay the real-estate taxes due. The bank demanded that Boone Builders cure the default, but Boone Builders was unable to do so.

The bank commenced two separate foreclosure actions. In the first action, the bank sought to foreclose on the $3.2 million mortgage that secured the development loan it had provided to Becker. The bank alleged that Becker defaulted on the promissory note and sought amounts due and owing under the note. The bank also brought suit against BFI and several members of BFI including respondents Steven L. Boone, Annette C. Boone, Michale S. Uzelac, Deanna M. Lasser, Ann–Marie Rasmus, Nancy C. and Robert G. Buehler (Buehlers), Pamela J. Noll, and Daniel P. Boone (individual guarantors) seeking to enforce the individual guaranties that had been executed guaranteeing the performance and payment obligations of Becker.

In the second action, the bank sought to foreclose on the three mortgages that secured the construction loans that it had provided to Boone Builders for the construction of the three model homes. The bank alleged that Boone Builders had defaulted on the promissory notes that secured the construction loans. The bank also brought suit against Steven L. Boone and Annette C. Boone, seeking to enforce personal guaranties they executed on behalf of Boone Builders.

In both actions, the bank named Kuechle as a defendant because of Kuechle's recorded mechanic's lien statement.

The district court consolidated the two actions. The bank and Kuechle moved for summary judgment. On May 30, 2008, the district court granted the bank's summary-judgment motion against Becker, Boone Builders, and BFI. The district court dismissed the bank's claims against the individual guarantors because they had guaranteed the debts of BFI and BFI did not incur any debt. The district court also dismissed without prejudice the claims against Noll and the Buehlers for lack of personal service. The district court denied Kuechle's claim against the majority of the lots because the bank's development mortgage was recorded before the first visible work. The district court, however, allowed Kuechle to foreclose its entire lien claim against the lots released by the loan-modification agreement because Kuechle's lien had priority over the bank's construction mortgages. Subsequently, the bank properly served Noll and the Buehlers and timely answers were filed. On August 1, 2008, the district court granted summary judgment in favor of Noll and Buehlers. This appeal follows.

## ISSUES

I. Did the district court err in granting summary judgment in favor of and dismissing the individual guarantors?

II. Did the district court err by allowing Kuechle to foreclose its entire blanket

mechanic's lien against less than all of the lots subject to the lien?

III. Did the district court err in denying the bank a decree of foreclosure on the lots in which the bank was a junior lienholder?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). No genuine issue of material fact exists "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997).

### I.

The bank challenges the district court's grant of summary judgment in favor of and dismissal of the individual guarantors, arguing that the district court should have reformed the guaranties because there was an obvious scrivener's error.

"[A] contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in the event of nonperformance" by the one primarily bound to perform. *Clark v. Otto B. Ashbach & Sons, Inc.*, 241 Minn. 267, 275, 64 N.W.2d 517, 522 (1954).

A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor. If a primary or principal obligation does not exist, there cannot be a contract of guaranty ... [because] there must be a principal debtor or obligor[,] [and] [w]ithout a principal debt there can be no guaranty.

*Schmidt v. McKenzie*, 215 Minn. 1, 6, 9 N.W.2d 1, 4 (1943) (quotation omitted). Because a guaranty is a contract, its terms must be understood in light of the parties' intentions and the circumstances under which the guaranty was given. *Marquette Trust Co. v. Doyle*, 176 Minn. 529, 533, 224 N.W. 149, 151 (1929). Further, "unambiguous contract language must be given its plain and ordinary meaning." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn.1999). A guarantor has the right to "insist that he is bound to the extent, in [the] manner, and under the circumstances pointed out in his obligation, and no further." *Schmidt*, 215 Minn. at 9, 9 N.W.2d at 5.

The relevant portion of the individual guaranties states:

A. *Boone Family Investments, LLC, a Minnesota limited liability company (hereinafter referred to as the 'Debtor'),* is the owner of certain real property located in the County of Sherburne,

State of Minnesota, (hereinafter referred to as the 'Premises').

B. The Debtor and the Lender have agreed that the Lender will make an advance ('Loan') to the Debtor in the principal amount of Three Million Two Hundred Thousand and 00/100 Dollars ($3,200,000.00) which loan is evidenced by a Loan Note of even date herewith from Debtor to the Lender (hereinafter referred to as the 'Note') to be disbursed pursuant to a Loan Agreement of even date.

C. To secure payment of the Note, the Debtor has executed and delivered to the Lender a Mortgage and Assignment of Rents and Security Agreement and Fixture Financing Statement of even date herewith (hereinafter referred to as the 'Mortgage') covering the Premises.

. . . .

E. In order to induce the Lender to make the Loan and accept the Note, the Mortgage and as additional security for the Loan and all monies to be advanced under the Note and performance of all obligations specified in the Loan Agreement, the Individual Guarantor has agreed to give this Guaranty.

(Emphasis added).

■ All of the relevant documents, with the exception of the loan-modification agreement, were signed on September 8, 2005. "Generally, instruments executed [simultaneously], by the same parties, relating to the same transaction, will be considered and construed together [because] they are, in the eyes of the law, one contract or instrument." *Farrell v. Johnson,* 442 N.W.2d 805, 806 (Minn.App.1989). The relevant documents include a loan agreement, promissory note, mortgage and assignment of rents and security agreement and fixture financing statement, an entity guaranty, and the individual guaran-

ties. The documents demonstrate that the parties intended that there was to be one loan for $3.2 million for the purpose of purchasing and developing the land. The majority of the documents indicate that: (1) the bank was the lender/mortgagee; (2) Becker was the debtor/borrower; and (3) Becker and BFI were joint mortgagors. The documents also indicate that Becker and BFI intended to and did grant the bank a mortgage to secure the loan, and that BFI intended to and did guaranty the debts of Becker. The individual guaranties, however, list BFI and not Becker as the debtor; this is the only place in all of the documents where BFI is listed as the debtor.

■ A contract can be reformed by a court if the following elements are proved:

(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument . . . failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Theros v. Phillips,* 256 N.W.2d 852, 857 (Minn.1977). A mutual mistake occurs when "both parties agree as to the [intended] content of the document but that somehow through a scrivener's error the document does not reflect that agreement." *Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn.1980). "These facts must be established by evidence which is clear and consistent, unequivocal and convincing." *Id.* The purpose of reformation is not to create a new contract; rather, it is to bring the written instrument into conformity with the intent of the contracting parties at the time of its inception. *Jablonski v. Mut. Serv. Cas. Ins. Co.,* 408 N.W.2d 854, 857 (Minn.1987).

The bank's argument, that the individual guarantors intended to guaranty the debts of Becker but through a scrivener's error guaranteed the nonexistent debt of BFI, and thus the guaranties should be reformed, has some merit. The argument is supported by the fact that the individual guarantors acknowledged signing the guaranties, and the individual guaranties refer to the loan, the loan amount, the loan agreement, the note, and the mortgage. The guaranties also provide that the individual guarantors are granting the guaranty to induce the bank to make the loan and accept the note, the mortgage and additional security for the loan and all monies to be advanced under the note, and the parties understood that there was only going to be one loan. Furthermore, all of the documents were signed the same day and list Becker as the debtor, not BFI. Thus, it appears that the intent of the guaranties was to guaranty the loan secured by the development mortgage.

 But there are facts that run contrary to the bank's argument and lend support to the individual guarantors' argument that there was no scrivener's error because they intended to guaranty the debt of BFI, and, thus, the documents reflect their intentions. All of the individual guarantors are members of BFI. Steven and Annette Boone, however, are the only members of Becker. It is logical that the members of an LLC would guarantee the debts of the entity of which they are members, but would not guaranty the debts of the entity of which they are not members and in which they have no direct or indirect financial stake. Additionally, all of the documents were drafted by the bank and given to the individual guarantors to sign, and it is a well-established principle of contract law that any ambiguity in the contract is construed against the drafter. *See Beattie v. Prod. Design &*

*Eng'g, Inc.*, 293 Minn. 139, 149, 198 N.W.2d 139, 144 (1972) ("[W]e must construe a contract in a manner designed to achieve the purpose of the contracting parties; if doubt still remains, we must construe the contract against the party who drafted it."). There is doubt as to the intention of the parties in this case. The contract was drafted by the bank and states that the individual guarantors are guaranteeing the debts of BFI.

Because there is a question of fact regarding the parties' intent, we conclude that summary judgment on this issue was inappropriate. Thus, we reverse the district court's grant of summary judgment and remand for further proceedings on the issue.

## II.

 The bank next argues that the district court erred by allowing Kuechle to foreclose its entire blanket lien against less than the entire project without apportioning Kuechle's costs for labor and material expended upon those lots.

 "Mechanics' liens are creatures of statute and exist only because of the statute creating them." *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn.1982). Minnesota courts have repeatedly held that once perfected mechanic's lien statutes are to be "liberally construed to effectuate their purpose of protecting the rights of workmen and materialmen who furnish labor and material for the improvement of real estate." *Id.* at 779–80; *see also Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 816 (Minn.2004) (stating that the mechanic's-lien statute "is remedial in nature and its essential purpose is to reimburse laborers and material providers who improve real estate and are not paid for their services"). Equitable principles are applicable in enforcing liens. *Northland Pine*

*Co. v. Melin Bros.,* 136 Minn. 236, 237, 161 N.W. 407, 408 (1917).

A lienholder who has contributed to the erection, alteration, removal, or repair of two or more buildings or other improvements situated upon or removed to one lot, or upon or to adjoining lots, under or pursuant to the purposes of one general contract with the owner, may file one statement for the entire claim, embracing the whole area so improved; or, if so electing, the lienholder may apportion the demand between the several improvements, and assert a lien for a proportionate part upon each, and upon the ground appurtenant to each, respectively.

Minn.Stat. § 514.09 (2008). The statute was originally intended to relieve a mechanic of the need to keep separate accounts when improving multiple contiguous lots. *Johnson v. Salter,* 70 Minn. 146, 151, 72 N.W. 974, 975 (1897).

▮▮▮▮ Under Minn.Stat. § 514.09, a lienholder may elect to file either a blanket lien embracing an entire project or file separate liens on each lot proportionate to the labor that was provided. The statute is silent as to whether a lienholder can assert its entire claim against less than all the properties for which labor and materials were provided under a blanket lien. When a statute is silent on a key point and is subject to different plausible interpretations, the statute must be considered ambiguous. *See Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001) (concluding that statute was ambiguous given its silence on the precise issue of whether a district court was divested of subject-matter jurisdiction for failure to hold a hearing within a prescribed timeframe and competing interpretations). Here, the statute is ambiguous because it can be read either to allow foreclosure of an entire lien against

less than all property subject to the lien or to require apportionment of the lien.

When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). We may determine the legislature's intent by considering the need for the law, the circumstances under which it was enacted, the object to be attained, other statutes concerning the same subject matter, the consequences of an interpretation, and contemporaneous legislative history. *Id.*

Two Minnesota lien statutes are instructive here. First, Minn.Stat. § 514.01 (2008) provides that "[w]hoever … contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery … shall have a lien *upon the improvement,* and *upon the land on which it is situated.*" (Emphasis added.) Arguably, this statute suggests that the lien must only be for the amount of the improvement and it only attaches to the land improved. Second, Minn.Stat. § 514.03, subd. 3 (2008), provides that "[t]he lien shall extend to all the interest and title of the owner in and to the premises improved, *not exceeding 80 acres* [.]" (Emphasis added.) Under this section, work may be performed on more than 80 acres, but the lien only attaches to 80 acres. Thus, this statute provides that a contractor could enforce an entire lien against less than all property on which work was performed. *See Gale v. Hopkins,* 165 Minn. 177, 179–80, 206 N.W. 164, 165 (1925) (stating if the entire tract is larger than the prescribed area, a tract not exceeding the prescribed area and including the improvements must be carved out of the larger tract). Like Minn.Stat. § 514.09, these sections lend credence to each parties' argument.

▮▮▮▮ This is an issue of first impression in Minnesota. There is, therefore, no

precedential case law. Both parties cite numerous cases that they contend are controlling. We have thoroughly reviewed all the cases cited by the parties and conclude that none of the cases is dispositive of the issue presented here. There is nothing in the mechanic's lien statutes that allows a blanket lien to be foreclosed on less than all the property subject to the lien. Likewise, there is nothing that prevents a blanket lien from being foreclosed on in this manner. Because the statute is ambiguous and there is no precedential case law and because equitable principles are applicable in enforcing mechanic's liens, we will examine and weigh the equities involved under the specific circumstances of the case at bar. See Northland Pine, 136 Minn. at 237–38, 161 N.W. at 408 (analyzing whether a receiver could be appointed in an action to foreclose a mechanic's lien and, if so, whether the circumstances justified such an appointment). A court may fashion equitable remedies based on the exigencies and facts of each case to accomplish a just result. Clark v. Clark, 288 N.W.2d 1, 11 (Minn.1979). In fashioning equitable relief, form gives way to substance. See Prince v. Sonnesyn, 222 Minn. 528, 538, 25 N.W.2d 468, 474 (1946) (stating the kinds and forms of specific remedies are as unlimited as the powers of courts to shape relief in accordance with the specific circumstances of the case). We are aware that Kuechle has perfected its lien and that once a lienholder has perfected a lien, the lien laws must be liberally construed to effect their purpose of protecting laborers and material suppliers who contributed to the improvement of property. Eischen Cabinet Co., 683 N.W.2d at 816.

Kuechle performed work under one contract with Becker, who held title to all of the land. Kuechle's work included grading, sewer, and street installation, and the work touched every lot in the development.

Until the bank, Becker, and Boone Builders entered into the loan-modification agreement, Kuechle was a lienholder junior to the bank's development mortgage and was entitled to foreclose the entire lien amount against the entire 40 acres, subject to the bank's mortgage. The loan-modification agreement, however, released a number of lots from the development mortgage. The bank did not ask or require Kuechle to agree to remain a junior lienholder after the loan-modification agreement. As a result, Kuechle's lien became senior on all of the lots released by the agreement. Kuechle was not paid the full amount due under its contract, and Kuechle perfected a blanket mechanic's lien covering the entire 40 acres. The bank has foreclosed or is in the process of foreclosing on the development mortgage. This action has extinguished or will extinguish Kuechle's lien on a majority of the lots, subject to Kuechle's right to redemption. See Minn.Stat. § 580.24 (2008) (stating that at the expiration of a mortgagor's redemption period, all creditors of the foreclosed property, beginning with the most senior creditor, are entitled to a seven-day redemption period). Kuechle could redeem by filing notice of redemption and bidding the amount of the senior lien. In this case, that amount would be $3.2 million, and arguably the property is no longer worth that amount.

There is no dispute that the bank is the senior lienholder on all of the lots that were not released by the loan-modification agreement, and because Kuechle is a junior lienholder, its lien rights would be extinguished if the bank purchased the property at the foreclosure—subject to Kuechle's redemption rights. Allowing Kuechle to foreclose the entire blanket lien against less than all of the property, subject to the lien after the bank's foreclosure of its mortgage, resurrects Kuechle's lien

rights on the majority of the development. Thus, this factor weighs in favor of the bank.

On the other hand, there are two factors that weigh in favor of allowing Kuechle to foreclose its entire lien against fewer than all of the lots subject to the lien. First, the purpose of the lien laws would be satisfied because Kuechle would receive full payment for labor and material it supplied to improve the property, and the bank would be prevented from reaping a $266,622.96 windfall. The bank has mortgages related to the construction loans on all the released properties. Presumably, the bank would buy the properties at a foreclosure sale to protect its interest. In doing so, the bank would acquire and own the entire development. Failing to allow Kuechle to foreclose its entire claim would allow the bank to own the development with the related infrastructure work completed and not paid for. Second, the bank could have but did not require Kuechle to agree to remain a junior lienholder on the released lots. The Minnesota Supreme Court has held that because a "bank is a professional lender with knowledge of construction in progress giving rise to inchoate liens for contractors and materialmen . . . [i]ts failure to consider potential priority conflicts and to obtain subordination agreements from them . . . cannot be deemed justifiable as an excusable mistake." *Carl H. Peterson Co. v. Zero Estates*, 261 N.W.2d 346, 348 (Minn.1977).

We conclude that allowing Kuechle to foreclose its entire lien claim on less than the entire property balances the equities and construes the lien laws liberally to effect their purpose because doing so places the parties in the same position as if the project had been developed without any problems. In the end, one owner would own the entire development complete with improvements and would be able to control and sell the entire development, and Kuechle would receive the full value of the contract for the work it performed.

In response to the bank's concern that allowing a mechanic's lien to be foreclosed on less than all property improved could potentially create a scenario where a lienholder would be allowed to pick and choose which lots it would like to foreclose a blanket lien against, we conclude that there are safeguards already in place that are sufficient to prevent this from happening. First, the district court may examine the equities and when the value of the property exceeds the lien amount of the senior lienholder, redemption may be used to acquire the property and protect a junior lienholder's rights. A debtor's property interest is not extinguished until the six-month statutory redemption period has expired. Once the debtor's six-month redemption period has expired, junior creditors "may redeem within seven days after the expiration of the redemption period . . . in the order of priority of their respective liens[.]" Minn.Stat. § 580.24 (2008). A district court, using its equitable powers, can determine whether redemption is warranted and whether a junior lienholder failed to protect its rights by failing to file notice to redeem and subsequently redeeming.

Second, the Minnesota Supreme Court requires apportionment when a bona fide purchaser acquires the property after the lienholder has established lien rights. *Carr–Cullen v. Cooper*, 144 Minn. 380, 385–86, 175 N.W. 696, 699 (1920). In *Carr–Cullen*, a builder built six homes on eight lots, and a materialman who contributed to the erection of the six houses under one general contract with the builder was entitled to file one lien statement for its entire claim covering all eight lots. *Id.* at 381–82, 175 N.W. at 697. After the

homes were completed, the builder sold the six homes to various individuals and a holding company. *Id.* at 383, 175 N.W. at 697–98. The court was careful to point out that the materialman's lien amount should be apportioned among the several owners of the property so that its lien against each of the six parcels into which the eight lots were divided was limited to the sum which the court found to be the value of the materials that went into the construction of each house. *Id.* at 386, 175 N.W. at 699.

Because the equities weigh in favor of allowing Kuechle to foreclose its entire blanket lien against the lots where it has priority, and doing so places the owner of the land and the contractor in the same position as had the project been completed without default, the district court did not err in granting summary judgment in favor of Kuechle.

## III.

 Finally, the bank argues that the district court erred by failing to grant its application for a decree to begin foreclosure actions on the three lots where it is a junior lienholder. The district court found that Kuechle's lien had priority over the bank's construction mortgages, and granted Kuechle the right to foreclose on the three lots. The bank correctly argues that generally a foreclosure by a junior lienholder does not extinguish the lien of any senior lienholder. *See Gerdin v. Princeton State Bank,* 384 N.W.2d 868, 871 (Minn.1986) (stating "[t]he purpose of a mortgage foreclosure sale ... 'is to terminate all interests junior to the [lien] being foreclosed and to provide the sale purchaser with a title identical to that of the [lienholder] as of the time the [lien] being foreclosed was executed' "). The district court did not grant the bank a decree of foreclosure, even though the district court concluded that Boone Builders

was in default. We conclude that the district court erred by failing to grant the bank a decree of foreclosure. Thus, we remand this issue to the district court to issue the bank a decree of foreclosure.

## DECISION

When, as here, there are genuine issues of material fact regarding the intent of the parties to an ambiguous contract, summary judgment is inappropriate. The part of the district court's order granting summary judgment and dismissing the individual guarantors is reversed and remanded for proceedings consistent with this opinion.

Under Minn.Stat. § 514.09, a mechanic's lienholder who has perfected a blanket mechanic's lien may foreclose the entire lien amount against less than all the property subject to the lien, provided that the equities do not unfairly burden one owner or property over other owners or properties. The part of the district court's order granting summary judgment to Kuechle is affirmed.

A junior lienholder may foreclose its lien, and the buyer at the foreclosure sale takes subject to the senior lienholder's lien. We remand to the district court to order a decree of foreclosure to the bank on the lots on which it is a junior lienholder.

**Affirmed in part; reversed in part, and remanded.**