NATIONAL CITY BANK OF MINNEAPOLIS, Respondent,

v.

Louis R. LUNDGREN and The Lundgren Associates, Inc.,
Appellants.

No. C3-88-1922.

Court of Appeals of Minnesota.

Feb. 7, 1989.
Review Denied March 29, 1989.

Thomas A. Keller, III, Kevin M. Busch, O'Connor & Hannan, Minneapolis, for respondent.

Kevin W. Rouse, David Y. Trevor, Dorsey & Whitney, Minneapolis, for appellants.

John S. Jackson, Minneapolis, for amicus curiae Minn. Bankers Ass.

Heard, considered and decided by CRIPPEN, P.J., and RANDALL and STONE,* JJ.

## OPINION

**BRUCE C. STONE, Judge.**

Louis R. Lundgren appeals the trial court's order denying his motions for summary judgment. The trial court determined that Lundgren could remain personally liable on guaranties despite the fact the principal debtors may have been discharged of liability by virtue of the bank's election to foreclose by advertisement rather than by action. Without tailoring it to the facts of this case, the trial court certified as important and doubtful the general question of whether a guarantor remains liable if the debtor is discharged by operation of law because of the creditor's election of remedies. We affirm.

## FACTS

Lundgren unconditionally guaranteed payment of two loans from respondent National City Bank of Minneapolis (the bank). One loan was to Oak Park Heights, Inc., and was secured by a mortgage on a parcel of real estate greater than 10 acres in size (Oak Park property). The other loan was to Shoreview Plaza Hotel Associates, a partnership, and was secured by a mortgage on a parcel of less than 10 acres (Shoreview property). The Oak Park project involved construction of a townhouse development and the Shoreview project involved construction of a hotel.

The two guaranties were essentially the same and contained the following language:

[G]uarantor hereby * * * unconditionally guarantees the punctual payment where due, whether at stated maturity, by acceleration or otherwise, all obligations of the Borrower now or hereafter existing * * * whether for principal, interest, fees or express or otherwise * * *.

\* \* \* \* \* \*

The liability of the Guarantor under this Guaranty shall be absolute and unconditional irrespective of:

(i) any lack of validity or enforceability of the Agreement, the Note, the Mortgage, the Term Loan Agreement, any other Loan Document, or any oth-

er agreement or instrument relating thereto;

* * * * * *

(iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Obligations * * *.

The guaranties further provided:

*Waiver.* The Guarantor hereby waives * * * any requirement that the Lender * * * exhaust any right or take any action against the Borrower or any other person or entity, including, without limitation, any collateral.

The principal debtors defaulted on the loans, the bank foreclosed both mortgages by advertisement, and the properties were sold to the bank at the sheriffs' sales. The proceeds from the sales were insufficient to cover the entire debts; there remained over $250,000 due on the Shoreview project and over $1.3 million on the Oak Park project. After the redemption period ran (six months on the Shoreview property and 12 months on the Oak Park property), the bank commenced two separate actions against Lundgren to enforce the terms of the unconditional guaranties. Lundgren moved for summary judgment, arguing that as a result of the bank's electing to foreclose the mortgages by advertisement, the principal debts were discharged pursuant to the anti-deficiency law, Minn.Stat. §§ 580.225, 582.30 (1986), when the properties were sold at the sheriffs' sales. Lundgren claimed because the debts were discharged his obligations under the guaranties were also discharged because they were merely derivative of the debts which no longer existed. In a consolidated order, the trial court denied the motions for summary judgment but certified as important and doubtful the issue of Lundgren's liability as guarantor in light of the state's anti-deficiency judgment law. Lundgren then appealed the order denying his motions for summary judgment.

Lundgren raised various other defenses to the bank's actions on the guaranties, including duress, accord and satisfaction, waiver, estoppel, laches, nonperformance by the bank, breach of fiduciary duty and failure to mitigate. Lundgren also brought several counterclaims against the bank. Pursuant to the parties' stipulation, the trial court postponed the trials until this court issues its decision on the summary judgment.

## ISSUE

Are a guarantor's obligations discharged when the creditor elects to foreclose the mortgage securing the principal debt by advertisement rather than by action?

## ANALYSIS

■■■ Other than in cases where this court exercises its discretion to decide an appeal, *see* Minn.R.Civ.App.P. 105, an order denying a motion for summary judgment is not appealable unless the trial court certifies the question presented on appeal as important and doubtful. Minn.R.Civ.App. P. 103.03(h). Not only must the trial court so certify the question, this court must independently decide if the question is indeed important and doubtful. *Emme v. C.O.M.B., Inc.,* 418 N.W.2d 176 (Minn. 1988).

Importance depends on weighing several factors. Importance increases if the decision could have statewide impact.

It [importance] increases with the length of the proceedings terminated by reversal and with the amount of harm inflicted on the parties by a wrong ruling by the trial court. Importance decreases with the probability of affirmance, the probability that trial will moot the issue, or the probability that a resolution at variance with that of the trial court will not terminate the action or that reversal will not relieve the parties of any significant burden.

*Id.* at 180.

We conclude the certified question is important. Resolution of the issue by a reversal could preclude two lengthy trials. Furthermore, the decision might well have statewide impact as it affects many typical real estate financing transactions.

A question is "doubtful" if there is no controlling precedent and there is substantial ground for difference of opinion. *Id.* at 179–80. There is no controlling precedent here because the question of a guarantor's liability, in light of the 1986 amendment to the anti-deficiency law, has yet to be judicially addressed. There is also substantial ground for difference of opinion.

### Prior Law

Prior to the 1986 amendment, the only anti-deficiency provision was contained in Chapter 580 of Minnesota Statutes which deals generally with foreclosure by advertisement. The provision, enacted in 1967, *see* 1967 Minn.Laws ch. 248, § 2, provided that where the property was foreclosed by advertisement, and where the redemption period was six months, the mortgagee or any other person "by purchasing the property at the sheriff's sale thereby waive[d] his right to a deficiency judgment against the mortgagor." Minn.Stat. § 580.23, subd. 1 (1984).

This provision was construed by the Eighth Circuit Court of Appeals to protect only the mortgagor and not the guarantor. *See Victory Highway Village, Inc. v. Weaver*, 634 F.2d 1099 (8th Cir.1980). The court noted that the guaranties in that case were unconditional in nature, allowing the secured creditor, the Small Business Administration (SBA), to release the debtor from liability without affecting the guarantor's liability. The court also noted that the SBA could have proceeded directly against the guarantor without first foreclosing the mortgage securing the principal debt. Consequently, the court reasoned

> [i]t would be anomalous to rule that the SBA, having gone to the trouble and expense of foreclosing the real estate security in an action which reduced the guarantors' potential liability, is then precluded from enforcing the guaranty contracts. We decline to do so. The contractual provisions were specific and straightforward. The SBA should not have its contractual rights subject to a

strained interpretation of a tangential state statute.

634 F.2d at 1102 (citation omitted).

The *Victory Highway* decision was based upon two sound points. First, it recognized that an unconditional guaranty is a separate obligation from the principal obligation. Secondly, it noted that the anti-deficiency law is designed to protect against a creditor's bidding an unfairly low price at a foreclosure sale and then pursuing the debtor for an unfairly high deficiency. Because the SBA had not acted unfairly in that case, the court determined it was inappropriate under those circumstances to extend the law to protect a guarantor. In addition, the district court had also reasoned that because the statute provided for waiver of rights only against the mortgagor and not against other parties, it should not be extended to protect guarantors. *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979), *aff'd*, 634 F.2d 1099 (8th Cir.1980).

> It appears to the court that, had the Minnesota Legislature intended to include the release of guarantors or any party other than the mortgagor, it would have explicitly provided for such in the statute.

*Id.*

### The 1986 Amendment

■ Lundgren does not distinguish or challenge the district and circuit courts' reasoning in the *Victory Highway* decisions. Instead, he argues that as a result of the 1986 amendment, a guarantor, as well as the principal debtor, is now protected by the law. He points out that under the prior law, foreclosure by advertisement operated as a waiver of a right to a deficiency judgment only against the mortgagor. *See* Minn.Stat. § 580.23, subd. 1 (1984). The amendment deleted this language and created a new section, 580.225, providing that foreclosure by advertisement operates as "full satisfaction of the mortgage debt." By changing the emphasis from the mortgagor to the mortgage debt, Lundgren argues, the legislature intended to protect not only the mortgagor

but every other party either directly or collaterally liable for the mortgage debt. For several reasons, we disagree.

First, the amendment was primarily geared toward protecting owners of agricultural property. Legislative findings state:

> Foreclosure sales and subsequent deficiency judgments are debilitating *the people foreclosed* and taking away their hope for readjustment after foreclosure, which is detrimental to the welfare of the state.

1986 Minn.Laws ch. 398, art. 19, § 1 (emphasis added). There is no indication the legislature intended to protect anyone other than the person foreclosed, i.e., the mortgagor.

Secondly, the district court in *Victory Highway* based its decision, in part, on the legislature's failure to expressly include guarantors as persons to be protected by the anti-deficiency law. 480 F.Supp. at 74. If the legislature had intended to overrule *Victory Highway*, therefore, it presumably would have included clear language to protect guarantors. Indeed, the Pennsylvania legislature has provided such protection by expressly listing the guarantor among those discharged after a foreclosure. 42 Pa.Cons.Stat.Ann. § 8103(d) (Purdon 1982).

Finally, we do not believe there is a significant distinction between the prior law's waiver of deficiency "against the mortgagor" and the current law's "satisfaction of the mortgage debt." *Compare* Minn.Stat. § 580.23, subd. 1 (1984), with Minn.Stat. § 580.225 (1986).

### Decisions of Other States

We reach this conclusion from review of other states' anti-deficiency statutes. California law, which is similar to our prior statute, prohibits a "judgment * * * for any deficiency" after a nonjudicial sale. Cal.Civ.Proc.Code § 580d (West 1976). This statute does not directly protect guarantors. *See, e.g., Mariners Savings & Loan Association v. Neil,* 22 Cal.App.3d 232, 99 Cal.Rptr. 238 (1971).

In contrast, Oklahoma law provides that where the creditor does not properly preserve its right to a deficiency against the principal debtor, "the proceeds of the sale * * * shall be deemed *in full satisfaction of the mortgage debt* and no right to recover any deficiency in any action or proceeding shall exist." Okla.Stat.Ann. Title 12, § 686 (West 1988) (emphasis added). Despite this different language, Oklahoma courts have held, like California's, that discharge of the debtor, or satisfaction of the mortgage debt, does not necessarily exonerate the guarantor. *See Riverside National Bank v. Manolakis,* 613 P.2d 438, 441 (Okla.1980).

### Common Law

We believe there has been no change in the state's anti-deficiency law as it relates to transactions not involving agricultural property. The *Victory Highway* decisions remain good law for determining whether a guarantor is discharged where a deficiency judgment against the principal debtor is barred by the anti-deficiency law. Because the anti-deficiency law itself does not protect a guarantor, the issue is whether the guarantor is protected by common law principles. *See Victory Highway,* 480 F.Supp. at 75.

Under the common law, any release or discharge of the principal debtor also discharges the guarantor unless the creditor expressly reserves its right of recourse against the guarantor in the contract releasing the debtor, or in the guaranty contract itself. *Id.* (quoting 38 C.J.S. *Guaranty* § 83, p. 1252 (1943)). The guaranty contract in this case does indeed reserve to the bank a recourse against Lundgren by providing that the Lundgren's liability is "absolute and unconditional" irrespective of any "lack of validity or enforceability of the [principal debt]" or "other circumstance which might otherwise constitute a defense available to, or discharge of, the Borrower." As did the guarantor in *Victory Highway,* Lundgren expressly waived his right to assert release of the debtor as a defense to the bank's enforcement of the guaranty. *See id.* at 75; *see also Mariners Savings,* 22 Cal.App.3d at 236, 99 Cal.Rptr. at 241 (guarantor by ex-

press contract may waive defense to creditor's action to recover deficiency).

### Periods of Redemption

 We should also note that even if the anti-deficiency law did protect guarantors, it would only apply to the Shoreview project where the property was foreclosed by advertisement and the redemption period was only six months. Section 580.225 provides that "the amount received from foreclosure sale [by advertisement] is full satisfaction of the mortgage debt, *except as provided in section 582.30.*" (Emphasis added.) Section 580.225 is made expressly subject to section 582.30 which, according to section 580.225, states when a foreclosure by advertisement will *not* be in full satisfaction of the mortgage debt.

Section 582.30, in turn, provides that "except as provided in this section, a person holding a mortgage *may* obtain a deficiency judgment against the mortgagor if the amount a person holding a mortgage receives from a foreclosure sale is less than * * * the amount remaining unpaid on the mortgage under Chapter 580 (emphasis added)." *Id.*, subd. 1. Hence, section 582.-30, which controls to the extent of any conflict with section 580.225, generally allows a deficiency judgment except as provided in section 582.30 itself. Section 582.-30 does indeed limit deficiency judgments, but it prohibits deficiency judgments after foreclosure by advertisement only where the redemption period is six months (the Shoreview property). *Id.*, subd. 2. All the other limitations in section 582.30 relate to deficiency judgments on mortgages on agricultural land. *Id.*, subds. 3–9.

Thus, section 582.30 *allows* a deficiency judgment after foreclosure by advertisement where there is a 12–month redemption period (the Oak Park property). Because a creditor may pursue a deficiency if the redemption period is 12 months, the mortgage debt is not satisfied pursuant to section 580.225 when the property is foreclosed by advertisement with a 12–month redemption. Consequently, under any statutory construction, at very least, the Oak Park guaranty remained effective.

### DECISION

We answer the certified question and hold the bank's election to foreclose by advertisement did not discharge appellant Lundgren, as guarantor, from his obligations under the separate contracts of guaranty. The trial court's order denying Lundgren's motions for summary judgment was thus proper.

AFFIRMED.