**In re Keith T. HARSTAD and Diane N. Harstad, d/b/a Harstad Companies, Debtors.**

**Bankruptcy No. 4-90-869.**

United States Bankruptcy Court, D. Minnesota.

Feb. 7, 1992.

James L. Baillie, Fredrikson & Byron, Minneapolis, Minn., for debtors.

Brian F. Kidwell, O'Neill, Burke, St. Paul, Minn., for ITT Commercial Finance Corp.

## MEMORANDUM ORDER DISALLOWING CLAIM NO. 242

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on the debtors' objection to claim no. 242 filed by ITT Commercial Finance Corporation. James L. Baillie appeared on behalf of the debtors and Brian F. Kidwell appeared on behalf of ITT. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 201. This is a core proceeding under § 157(b)(2)(B). Based on the memoranda, arguments of counsel and the file in this case, I make the following memorandum order.

### FACTUAL BACKGROUND

ITT Industrial Credit Company[1] loaned $3,600,000.00 to Keith and Diane Harstad and John and Catherine McCulloch on August 31, 1983. The debtors and the McCullochs executed and delivered to ITT a mortgage note and a mortgage deed secured by commercial real estate in St. Paul known as the 333 Sibley Building. At the time the debtors and McCullochs executed the mortgage note and deed, they also executed guaranties guarantying the debt evidenced in the mortgage note.

The executed guaranties contain the following language:

> [T]he undersigned irrevocably and unconditionally guarantees to ICC[2] the full

---

**1.** There is no explanation in the record of how this claim came to be held by ITT Commercial Finance Corporation.

**2.** ICC refers to ITT Industrial Credit Company. See footnote 1.

payment and prompt performance of each and every provision of the Loan Documents, and all liabilities, direct or contingent, joint, several, or independent arising in conjunction with said Loan Documents.... The undersigned waives notice and acceptance of this Guaranty and of any liability to which it applies, and waives presentment, demand of payment, notice of dishonor or non-payment, protest, notice of protest on any such liabilities, suit or other action by ICC, and tender of Notices of Default on any Loan Document.

\* \* \* \* \* \*

ICC shall not be required to first resort for payment to the Borrowers, or other persons or corporations, their properties or estates, or to any collateral security, property, liens, mortgages or other rights or remedies whatsoever, prior to requiring of the undersigned full satisfaction of the liabilities hereby guaranteed.

The debtors and the McCullochs created a partnership, Griggs–Midway Management Company, to manage the Sibley Building property and other property.[3] The debtors, the McCullochs, and the Griggs–Midway Management Company were also parties to an Assignment of Leases, Rents and Profits executed on or about August 31, 1983, with respect to the Sibley Building property.

The mortgage note matured on September 10, 1989. The debtors and the McCullochs defaulted under the terms of the mortgage note by failing to pay the note in full at maturity. They also defaulted on their obligation to pay real estate taxes on the property securing the mortgage. The debtors filed this Chapter 11 case on February 16, 1990.

ITT sought relief from the automatic stay to foreclose by advertisement on the mortgaged property. ITT asserted that the value of the property was less than the principal amount due which exceeded

$2,592,234.90 exclusive of interest, penalties and costs. I granted ITT relief from the automatic stay on May 14, 1990. ITT purchased the property at the foreclosure sale on June 28, 1991, subject to a six month redemption period.[4]

Based on the debtors' guaranties, ITT filed an unsecured claim, claim no. 242, in the amount of $1,156,821.40, for the deficiency resulting from the foreclosure sale.

The debtors objected to ITT's claim. The debtors argue that under Minnesota's anti-deficiency statute, Minn.Stat. § 582.30, subd. 2, the mortgagee is prohibited from collecting a deficiency from the debtors since the debtors were the mortgagors.

### DISCUSSION

The issue is whether ITT's unsecured claim against the debtors as guarantors for a deficiency resulting from a foreclosure sale should be allowed.

A claim, which is filed, "is deemed allowed, unless a party in interest, ... objects." 11 U.S.C. § 502(a). Upon objection to a claim by a party in interest, and after notice and a hearing, the court shall determine the amount of the claim and allow the claim unless the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

ITT argues that their claim should be allowed in the amount of $1,156,821.40 as an unsecured claim against the debtors as guarantors for the deficiency resulting from the foreclosure of the Sibley Building property.

The debtors argue that although they signed guaranties of the debt, they are also the mortgagors and since Minn.Stat. § 582.30, subd. 2, prohibits mortgagees from collecting deficiency amounts from the mortgagors, ITT's unsecured claim would not be enforceable under Minnesota

---

**3.** According to an affidavit filed by ITT, Towle Real Estate Company was hired to manage the Sibley Building property in December 1988.

**4.** Nothing in the record indicates the amount ITT bid in at the foreclosure sale.

law and, therefore, it should not be allowed.

Prior to 1986, when a mortgagee foreclosed by advertisement with a six month redemption period, the mortgagee "or any other purchaser so purchasing at the sheriff's sale shall by purchasing the property at the sheriff's sale thereby waive his right to a deficiency judgment against the mortgagor." Minn.Stat. § 580.23, subd. 1 (1984).

In 1986, the statutes were amended and the above language in § 580.23, subd. 1, which prohibited the mortgagee from collecting a deficiency judgment against the mortgagor, was deleted. The legislature inserted a new provision, § 582.30, subd. 2, which is a general prohibition against deficiency judgments if a mortgage is foreclosed by advertisement with only a six month redemption period. Minn.Stat. § 582.30, subd. 2 (1986). The 1986 amendments also included § 580.225 which provides that "[t]he amount received from foreclosure sale under this chapter is full satisfaction of the mortgage debt, except as provided in section 582.30." Minn.Stat. § 580.225 (1986).

The debtors initially argue that the 1986 amendment, Minn.Stat. § 580.225, proscribes collection of a deficiency from anyone including the mortgagors or the guarantors. Although the statute could fairly be read to relieve everyone of liability after foreclosure by advertisement, the Minnesota Court of Appeals expressly rejected this argument in *National City Bank v. Lundgren* 435 N.W.2d 588, 592 (Minn.Ct.App. 1989).

In *National City Bank*, Lundgren individually guarantied loans made to a corporation and a partnership. Lundgren argued that the 1986 amendments to the Minnesota Statutes were intended to protect the guarantors as well as the mortgagors from any deficiency judgment liability. The court of appeals, rejected Lundgren's argument and found no "significant

distinction between the prior law's waiver of deficiency 'against the mortgagor' and the current law's 'satisfaction of the mortgage debt.'" *National City Bank*, at 592. The court found that the bank's foreclosure by advertisement did not discharge Lundgren from his obligations as guarantor of the loans.

ITT relies on *National City Bank*, and argues that, like Lundgren, the debtors were acting as individual guarantors for a partnership. Minnesota law defines a partnership as "an association of two or more persons to carry on as coowners a business for profit." Minn.Stat. § 323.02, subd. 8 (1990). ITT presented no evidence that the loan was made to the debtors and the McCullochs as a partnership but argues that a partnership can exist without strict compliance with the Minnesota Uniform Partnership Act.[5] ITT cites several cases to support its assertion that courts have found partnerships to exist even where there is an expressed intention not to create a partnership. *See Lund v. Norwest Bank (In re Flight Transp. Corp. Sec.)*, 825 F.2d 1249 (8th Cir.1987), *Schaefer v. Bork*, 413 N.W.2d 873 (Minn.Ct.App.1987), *Sit v. T & M Properties*, 408 N.W.2d 182 (Minn.Ct.App.1987), *Hansen v. Adent*, 238 Minn. 540, 57 N.W.2d 681 (1953). Yet, ITT presented no evidence from which to find the debtors and McCullochs acted as a partnership. Although intent to form a partnership is not dispositive, there is no evidence to indicate that the debtors were executing guaranties to secure a loan made to a partnership.

In fact, the debtors previously formed a partnership, Griggs–Midway Management Company, to manage certain properties. The debtors and the McCullochs executed the Assignment of Leases, Rents and Profits both individually and as partners of Griggs–Midway Management Company. This indicates that the debtors knew about partnerships, knew how to form a partner-

---

5. ITT now wants an evidentiary hearing on this issue. However, ITT did not indicate it intended to call witnesses as required by Local Rule 1202(c) nor did it present any evidence of the existence of such a partnership. In the absence

of an issue of fact in the record, this objection can be decided on affidavits. Fed.R.Bankr.P. 9017, Fed.R.Civ.P. 43(e) and Local Rule 1214. *See also* Fed.R.Civ.P. 56 and Fed.R.Bankr.P. 7056 and 9014.

ship and they specifically chose to form a partnership to manage property. There is no evidence that the debtors and the McCullochs were acting as a partnership when they purchased the property and ITT loaned them $3,600,000.00.[6]

ITT also argues that *National City Bank* expressly found that the Minnesota anti-deficiency statute does not apply to guarantors, therefore, the debtors are liable for the deficiency amount as guarantors of the mortgage note. The court in *National City Bank* relied on *Victory Highway Village, Inc. v. Weaver,* 634 F.2d 1099 (8th Cir.1980), to conclude that a guarantor's liability is not discharged through Minn.Stat. § 580.23, subd. 1 (1980). The court in *Victory Highway* found that the mortgagee, in the pre–1986 statute, waived any deficiency claim against only the mortgagor since the statute did not expressly include the term guarantors. *Victory Highway,* at 1102. The court of appeals in *National City Bank* expanded on this analysis and concluded "[i]f the legislature had intended to overrule *Victory Highway,* therefore, it presumably would have included clear language to protect guarantors." *National City Bank,* at 592.

The debtors also rely on *National City Bank* as indirect support for their position that the debtors cannot be held liable for the deficiency claim as guarantors. The debtors argue that *National City Bank* affirms that under Minnesota Statutes mortgagors, the persons foreclosed, cannot be held liable for a deficiency claim. *National City Bank,* at 592. In this case, the debtors argue, they are the mortgagors and, therefore, they cannot be held liable for the deficiency.

This case differs significantly from both *National City Bank* and *Victory Highway* in that the mortgagors and guarantors in those two cases were separate entities. In this case, the same entities, the debtors, are both the mortgagors and the guarantors. ITT knew that it was asking for guaranties from the same individuals who signed the mortgage note. In fact, ITT had the debtors execute the mortgage note and guaranties the very same day. Thus, *National City Bank* and *Victory Highway* are inapplicable to the facts of this situation.

In this case, the debtors purported to guaranty their own debt. A guaranty is commonly defined as, "[a]n agreement by which one person assumes the responsibility of assuring payment or fulfillment of *another's* debts or obligations." The American Heritage Dictionary, Second College Edition 580 (1985) (emphasis added). A guaranty is also defined as, "[a] collateral agreement for performance of *another's* undertaking." Black's Law Dictionary 634 (5th ed. 1979) (emphasis added).

In *Schmidt v. McKenzie,* 215 Minn. 1, 6, 9 N.W.2d 1, 3 (1943), the Minnesota Supreme Court defined a guaranty as " 'a collateral contract to answer for the payment of a debt or the performance of a duty in case of the default of another who is primarily liable to pay or perform the same.' 3 Dunnell, Dig. & Supp. § 4068."

The court also went on to quote with approval from 24 Am.Jur., Guaranty, § 4:

"To constitute a guaranty, there must be a principal debtor or obligor. Without a principal debt there can be no guaranty."

The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral.

*Schmidt v. McKenzie,* 215 Minn. at 6–7, 9 N.W.2d at 3–4. *See also Clark v. Otto B.*

---

**6.** It appears when ITT foreclosed its mortgage on the Sibley Building property there was no mention of any partnership. A partnership does not require a separate name but the foreclosure could have alluded to "Keith and Diane Harstad a partnership" or a "partnership consisting of Keith and Diane Harstad." If ITT's argument is now correct, it would call into question the validity of the foreclosure, therefore, ITT may be estopped from asserting their partnership argument. It appears that ITT recently concocted this partnership argument to defend this claim objection.

*Ashbach & Sons, Inc.,* 241 Minn. 267, 275, 64 N.W.2d 517, 522 (1954), *Dahmes v. Industrial Credit Co.,* 261 Minn. 26, 32, 110 N.W.2d 484, 488 (1961), *Twin City Co-op Credit Union v. Bartlett,* 266 Minn. 366, 369, 123 N.W.2d 675, 677 (1963), *Charmoll Fashions, Inc., v. Otto,* 311 Minn. 213, 216–217, 248 N.W.2d 717, 719 (1976), *Fidelity Bank and Trust Co., v. Fitzimons,* 261 N.W.2d 586, 590 (Minn.1977).

In this case, the principal obligors of the note are also the guarantors. The undertakings of the obligors are not different from the promises of the guarantors. The debtors basically promised to pay the same debt twice, once as mortgagors and again as guarantors.

As a matter of contractual law, guarantying one's own debt would render the guaranty meaningless because one cannot obligate herself to do anything she is not already obligated to do, therefore, the guaranty has no effect other than creating another piece of paper and calling it a guaranty. The "mere designation of a document as a 'guaranty' does not conclusively establish it as such." *Dahmes,* 261 Minn. at 33, 110 N.W.2d at 488.

As a matter of policy, allowing mortgagors to sign guaranties for the mortgaged property would render the anti-deficiency statute meaningless. If the statute is enforced against a guarantor who is also the mortgagor, the legislature's intent to protect the mortgagor is lost.

Therefore, I conclude that since the debtors are both the principal obligors and guarantors of the same debt, the agreement does not constitute a guaranty. The agreement is unenforceable against the debtors and ITT's claim in the amount of $1,156,821.40 must be disallowed.

THEREFORE, IT IS ORDERED:

Claim no. 242 filed by ITT Commercial Finance Corporation is disallowed.