ROBERT G. WICKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wicker v. Commissioner
Docket Nos. 27297-87, 8561-89
United States Tax Court
T.C. Memo 1993-431; 1993 Tax Ct. Memo LEXIS 440; 66 T.C.M. (CCH) 757; September 15, 1993, Filed *440 Decisions will be entered under Rule 155. Pro se, Robert G. Wicker. For respondent, Michael A. Urbanos. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: This case was submitted to the Court pursuant to Rule 122. [1] Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax Section Section
Section
Section
Year
Deficiency
6653(b) 6653(b)(1)
6653(b)(2)
6661 1978
$ 10,233
$ 5,117 $ --  --
$ --  1979
17,437
8,719
--
--
--
1980
12,447
6,224
--
--
--
1981
23,801
11,901
--
--
--
1982
6,382
--
3,191 *
1,596
1983
7,664
--
3,832 *
1,916
* 50 percent of the interest due on the portion of the
underpayment attributable to fraud. Respondent determined that
the entire underpayment for each of the years 1982
and 1983 was due to fraud.
*441 The issues for decision are: 1. Is petitioner entitled to deduct certain expenses in excess of the amounts allowed by respondent for the years 1981, 1982, and 1983? We hold that he is not. 2. Did petitioner recognize either a gain or a loss on a foreclosure that occurred in 1978? We hold that he did not. 3. Is petitioner entitled to deduct a loss claimed with respect to an alleged cancellation of a contract for deed in 1982? We hold that he is not. 4. Is petitioner entitled to carry forward alleged net operating losses to any of the years at issue? We hold that he is not. 5. Is petitioner liable for the additions to tax for fraud for each of the years at issue? We hold that he is liable for each such year, except 1982 and 1983. 6. Is petitioner liable for the addition to tax for substantial understatement of income tax under section 6661 for each of the years 1982 and 1983? We hold that he is not. FINDINGS OF FACT Virtually all of the facts have been stipulated and are so found. Robert G. Wicker (petitioner) resided in Duluth, Minnesota, at the time the petition was filed in docket No. 27297-87, and in Oakdale, Minnesota, at the time the petition was filed in *442 docket No. 8561-89. Petitioner attended the University of Minnesota from 1948 to 1950 as a science, literature, and arts student and from 1950 to 1955 as a law student. Petitioner earned a substantial number of credits in business and law-related courses. Petitioner was president and director of Franklin Auto Body Company, Inc. (FAB), Wicker Enterprises, Inc. (WE), C.A.M. Productions, and Cherokee-Linden Holding Company, Inc., from January 1, 1978, to June 20, 1981. Sometime prior to the years at issue, Florence Wicker, petitioner's mother, owned 48 of the outstanding shares of FAB stock and all of the outstanding shares of WE stock. Charles Pratt owned one share of FAB stock, and WE owned the remaining shares of FAB stock. In 1972, petitioner paid Florence Wicker (1) $ 100 for an option to buy her 48 shares of FAB stock for $ 48,000 and (2) $ 100 for an option to buy her 100 shares of WE stock for $ 55,000. Florence Wicker died on April 5, 1975. A lawsuit arose relating to Florence Wicker's estate (estate), which was settled in September 1975 (settlement). Under the terms of the settlement, petitioner waived his interest in the estate and assigned to FAB his stock options *443 to purchase from the estate certain stock in FAB and WE. FAB exercised those stock options and, as required by the settlement, paid the estate the agreed upon purchase price of $ 100,025.50 and paid the attorneys representing John Wicker and Franklin Wicker (Franklin) the agreed upon fee of $ 25,000. In order to make the payments for which it was obligated under the settlement, FAB borrowed $ 195,000 (the loan) from Citizens Bank of St. Louis Park, Minnesota (Citizens) and entered into a mortgage loan agreement (mortgage agreement) with Citizens on February 3, 1976. [2] Pursuant to the mortgage agreement, the following properties were used as collateral for the loan from Citizens: *444 886 Jefferson 195 University Avenue 97 N. Snelling 295 University Avenue 297 University Avenue 133 1/2 A Wilkin Farm 1419 Linden Wagon Wheel Trail [3]
980 Cherokee 299 and 301 University Avenue FAB had purchased the above-described properties except 980 Cherokee at various times between 1930 and 1969 from unrelated parties. The loan from Citizens was due on February 3, 1977, but was extended. In April 1978, Citizens foreclosed (1978 foreclosure) on the following mortgaged properties [4] which had the following bases on the date of foreclosure: Property
Basis
886 Jefferson
$ 4,794.86 97 N. Snelling
2,553.94
295 University Avenue
2,598.03
297 University Avenue
3,889.15
Wilkin Farm
19,102.44
1419 W. Linden
39,136.74
299 and 301 University Avenue
4,297.12
Pursuant to the terms of the mortgage agreement *445 and applicable Minnesota law, the properties foreclosed upon (the foreclosed properties) were sold. At the time of the 1978 foreclosure, the balance remaining on the loan was $ 175,206.38. Petitioner and Franklin entered into an oral contract to redeem the foreclosed properties prior to April 7, 1979. FAB executed a deed, dated April 6, 1979, in which it quitclaimed its interest in the 97 N. Snelling property to Franklin in consideration for "One Dollar and other good and valuable consideration". FAB and WE filed tax returns showing income or (losses) in the following amounts for the following years: [5]
Year
FAB
WE 1970
$ (3,046.13) $ --  1971
(605.38)
--
1972
(3,774.64)
--
1973
3,430.11 --
1974
(10,288.59)
(555.88)
1975
3,460.63 (3,398.90)
1976
(21,353.01)
(23,666.94)
1977
17,168.08 (698.77)
Neither FAB nor WE filed tax returns for taxable *446 years after 1977. Petitioner filed a tax return for each of the years at issue and an amended tax return for the year 1980. Each such return showed no tax due. The parties have agreed that, for purposes of this case, the income and expenses of FAB and WE for each year at issue are to be considered the income and expenses of petitioner for each such year. The parties stipulated that petitioner earned gross income and is allowed business expenses for the years at issue in the following amounts: Year
Gross Income
Allowed Expenses
1978
$ 53,827.00 $ 47,767.00 1979
85,323.05
71,206.10
1980
80,319.57
75,575.46
1981
119,967.00
100,523.43
1982
88,369.00
96,531.61
1983
88,594.00
90,291.41
The parties further stipulated that petitioner is entitled to a $ 50 Schedule A campaign contribution credit for the year 1980 and Schedule A expenses for the years 1981 and 1982 equal to $ 1,476.92 and $ 678.63, respectively. On November 8, 1985, petitioner was convicted in Federal District Court on three counts of income tax evasion under section 7201 for the years 1978, 1979, and 1980. This conviction was affirmed by the United States Court of Appeals for the Eighth Circuit *447 on February 3, 1987, and no further appeal was taken. The parties stipulated that the additions to tax for fraud will apply to any deficiencies for the years at issue. OPINION We note initially that the fact that the instant case was submitted pursuant to Rule 122(a) does not alter either party's burden of proof or the effect of a failure of proof. Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). Petitioner generally bears the burden of proving that respondent's determinations in the notices of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner also bears the burden of proof on any new matters he raises. Rule 142(a). Respondent, however, has the burden of proving fraud, and that burden must be carried by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent also bears the burden of proof in respect of any increase in a deficiency and any new matters that were not raised in the notices of deficiency. Rule 142(a). 1. Claimed Additional Expenses for the Years 1981 through *448 1983
Petitioner asserts that he is entitled to deduct certain expenses for each of the years 1981 through 1983 in addition to certain other expenses allowed by respondent for those years. None of these expenses was claimed by petitioner on his returns for those years. In paragraph 18 of the stipulation of facts, filed by the parties on June 21, 1990, the parties agreed that certain expense schedules attached to that stipulation by the parties (the original schedules) reflected "all of the remaining issues" for taxable years 1981 through 1983. The original schedules list numerous expense items for those years. An amount is set forth next to some, but not all, of the expense items listed. Attached to the third supplemental stipulation of facts, filed by the parties on May 20, 1992, are certain other expense schedules (the revised schedules) which the parties stipulated "are expenses for the years 1981, 1982 and 1983" and which update the original schedules. The revised schedules list the same expense items previously listed on the original schedules and set forth an amount next to most of the listed items, including many of the items for which the amounts had been left blank *449 in the original schedules. The third supplemental stipulation of facts also states in part: Petitioner claims the amounts listed below as additional expenses for the years 1981, 1982, and 1983. Petitioner provided documentation supporting the expenses. Respondent disagrees that the expenses should be allowed because the items are new issues and were not included in items previously stipulated to in Stipulation of Facts number 18. All items except Koller wages were presented to respondent on May 15, 1992. Koller wages were presented to respondent on May 8, 1992. * * *
The third supplemental stipulation of facts then sets forth a list of the additional types of expenses which are claimed by petitioner for each of the years 1981, 1982, and 1983 and which were not listed on the original schedules or the revised schedules. For each of those years, the amount claimed by petitioner for each such type of expenses is shown. The parties disagree over whether petitioner is entitled to deductions for the years 1981 through 1983 for the additional expenses claimed by petitioner in the third supplemental stipulation of facts. Respondent contends that she relied on the statement *450 in paragraph 18 of the stipulation of facts that the expense items listed on the original schedules reflected all of the remaining expense issues. Therefore, respondent argues, the Court should not relieve petitioner of that stipulation. Respondent also points to the fact that, except for one new expense item relating to Koller wages, which was provided to respondent by petitioner on May 8, 1992 -- 10 days before the date this case was calendared for trial, the remaining new expense items claimed by petitioner were not given to respondent until three days before that trial date. Respondent claims that she could not verify the claimed additional expenses in such a short period of time. Petitioner contends that he provided respondent's counsel with documentation regarding the additional expenses as early as June 1990, and, before that, to the examining agent who had been assigned to audit his returns for the years 1981 through 1983. Petitioner's contention is rejected by the third supplemental stipulation of facts which states in pertinent part: All items except Koller wages were presented to respondent on May 15, 1992. Koller wages were presented to respondent on May 8, *451 1992.
More importantly, there is nothing in the record establishing that the additional expenses claimed by petitioner for 1981, 1982, and 1983 have been substantiated. The third supplemental stipulation of facts provides that petitioner "provided documentation supporting the expenses" several days before the scheduled trial date for this case. Petitioner would have the Court interpret this language as a concession by respondent that petitioner's documentation did, in fact, substantiate the additional expenses. While the stipulation in question is not as clear as we would like, we believe that it is reasonable to construe it to mean that petitioner provided respondent documentation which he claimed would substantiate the additional expenses. [6] Because the documentation was provided so close to the scheduled trial date, respondent did not have time to determine whether the documentation did, in fact, substantiate the additional expenses. None of the documentation provided by petitioner shortly before the trial date was made part of the record in this case. Thus, there is nothing in the record from which this Court could determine whether the additional expenses claimed by *452 petitioner have been substantiated. Accordingly, we conclude that petitioner has failed to establish that he is entitled to deductions for the additional expenses he is claiming for each of the years 1981, 1982, and 1983. *453 2. Tax Consequences of the 1978 Foreclosure
a. Jurisdiction to Determine an Increased Deficiency Under Section 6214(a)
We note preliminarily that petitioner asserts for the first time in his reply brief that the Court does not have jurisdiction to consider whether petitioner recognized a gain as a result of the 1978 foreclosure because such a gain would result in a deficiency in excess of the amount determined in the notice of deficiency for that year. Petitioner correctly notes that respondent did not determine any such gain in the notice of deficiency or assert it in her pleadings. Petitioner concludes that, since respondent did not amend her answer to claim an increased deficiency based on such a gain, section 6214(a) prevents the Court from entering a decision for 1978 in an amount greater than the amount determined in the notice of deficiency. Section 6214(a) gives this Court jurisdiction to determine a deficiency or addition to tax larger than that stated in the notice of deficiency if respondent claims the increased amount "at or before the hearing or a rehearing." Ordinarily, this Court will not entertain an issue that has not been pleaded properly, and, *454 absent a clear and formally pleaded claim by respondent for an increased deficiency, will not enter a decision in an amount greater than the deficiency determined in the notice of deficiency. Sec. 6214(a); Pallottini v. Commissioner, 90 T.C. 498, 500 (1988); Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984); see Guaranty Trust Co. of New York, Executor v. Commissioner, 31 B.T.A. 19, 23 (1934), affd. per curiam 76 F.2d 1010 (2d Cir. 1935). However, Rule 41(b)(1) provides that when an issue not raised in the pleadings is tried with the express or implied consent of the parties, that issue is treated in all respects as if it had been raised in the pleadings. Thus, where respondent raises an issue which could result in an increased deficiency without formally amending her pleadings and that issue is tried with petitioner's express or implied consent, the requirement in section 6214(a) that respondent make a claim for the increased deficiency is satisfied. See Woods v. Commissioner, 91 T.C. 88, 93 (1988); *455 Pallottini v. Commissioner, supra.
A letter from respondent's counsel to petitioner, dated September 17, 1991, which was attached to a status report filed by respondent with the Court on October 4, 1991, and a letter from petitioner to respondent's counsel, dated September 20, 1991, which was attached to a status report filed by petitioner with the Court on October 7, 1991, suggest that the issue of the tax consequences of the 1978 foreclosure was raised by petitioner himself at least as early as the summer of 1991. Both of those letters indicate that petitioner gave respondent's counsel documents relating to that foreclosure and claimed an ordinary loss resulting therefrom. In her trial memorandum, which was mailed to petitioner on April 27, 1992, respondent listed one of the issues for the Court's resolution as "Whether petitioner had a gain or a loss on foreclosure of certain real estate in 1978." In the first supplemental stipulation of facts, filed (along with certain other stipulation documents) by the parties together with their motion submitting this case pursuant to Rule 122, the parties agreed that "Respondent does not waive * * * [her] *456 right to assert additional income relating to the foreclosure of real estate." It is clear then that petitioner himself raised the issue of the tax consequences of the 1978 foreclosure, although he claimed a loss therefrom, at least as early as the summer of 1991. It is also clear that, when petitioner received respondent's trial memorandum in late April or early May 1992, he was aware that respondent did not agree that he had a loss from the 1978 foreclosure. Instead, respondent asserted that he had a gain therefrom. Petitioner could have raised an objection to respondent's assertion in one of the supplemental stipulations filed by the parties. He also could have made such an objection in his trial memorandum. Petitioner also could have chosen to have a trial and raise such an objection at that time. However, petitioner did not do any of those things. Instead, until he filed his reply brief in October 1992, petitioner made no objection to respondent's position that he had a gain on the 1978 foreclosure. He also agreed to submit this case without a trial pursuant to Rule 122. Under the foregoing circumstances, we do not believe petitioner was either surprised or disadvantaged *457 by respondent's claim that the 1978 foreclosure resulted in a gain. We conclude, therefore, that the issue of whether petitioner had a gain from the 1978 foreclosure was submitted to the Court with petitioner's consent within the meaning of Rule 41(b)(1) and that respondent has asserted a claim for an increased deficiency as required by section 6214(a). See Woods v. Commissioner, supra; Pallottini v. Commissioner, supra; see also Pesch v. Commissioner, 78 T.C. 100, 110 n.11 (1982). Respondent, however, has the burden of proving any such gain because the issue of whether petitioner recognized a gain for 1978 on the foreclosure is a new matter which was not raised in the notice of deficiency and which would result in a deficiency greater than that determined in the notice of deficiency. Rule 142(a). b. Gain or Loss on the 1978 Foreclosure
Petitioner and respondent disagree over the tax consequences resulting from the 1978 foreclosure. Respondent claims that petitioner had a $ 98,834.10 gain calculated as the difference on the date of that foreclosure between the outstanding *458 balance on the loan from Citizens and the adjusted bases of the foreclosed properties. [7] Although petitioner did not claim any loss from the 1978 foreclosure on his return for the year 1978, petitioner contends on brief that he had an ordinary loss relating to that foreclosure. He originally computed the claimed loss as equal to $ 62,088.42, which, although not altogether clear, appears to be his computation of the equity in the foreclosed properties at the time of foreclosure. On brief, however, petitioner computed the loss as equal to $ 76,372.28, which is the aggregate bases in the foreclosed properties at the time of foreclosure. We will deal first with the loss claimed by petitioner. *459 Petitioner's theory for the claimed loss relating to the 1978 foreclosure is not clear. He seems to argue that he is entitled to such a loss because he sold the foreclosed properties to Franklin in exchange for Franklin's assumption of the mortgage held by Citizens and a second mortgage held by the estate of his mother. Petitioner asserts that he never received credit for his bases in the foreclosed properties on the sale. Assuming arguendo that petitioner's theory for being entitled to a loss with respect to the 1978 foreclosure were valid, the record does not support his theory. [8] Although there is evidence in the record that FAB quitclaimed its interest in one of the foreclosed properties (namely, the 97 N. Snelling property) to Franklin, there is nothing in the record to support petitioner's assertion that he sold each of the foreclosed properties to Franklin. There is also nothing in the record to support petitioner's claim that Franklin assumed the mortgage held by Citizens and a mortgage held by his mother's estate. We are not required to accept, and we do not accept, petitioner's assertions on brief which are not supported by the record. Rule 143(b); Webb v. Commissioner, 67 T.C. 1008, 1017 (1977). *460 Accordingly, petitioner has failed to establish his entitlement to any loss relating to the 1978 foreclosure. Turning now to respondent's contention that petitioner had a gain from the 1978 foreclosure, section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized over the adjusted basis of the property and that the loss shall be the excess of that adjusted basis over the amount realized. The parties stipulated that Citizens "foreclosed on the property" in April 1978. Although this stipulation is not as clear as the Court would like, we infer from the mortgage agreement and applicable Minnesota law that the foreclosed properties were sold at a foreclosure sale. Such a sale constitutes a sale for purposes of section 1001(a). Lamm v. Commissioner, 873 F.2d 194, 196 (8th Cir. 1989), *461 affg. Ryan v. Commissioner, T.C. Memo. 1988-12; Aizawa v. Commissioner, 99 T.C. 197, 198 (1992); see Helvering v. Hammel, 311 U.S. 504 (1941). The term "amount realized" is defined in section 1001(b) (with certain modifications not applicable here) as the sum of any money received plus the fair market value of any property (other than money) received. Where a taxpayer's property is sold at a foreclosure sale, the amount realized on the sale includes the amount of indebtedness discharged as a result of the foreclosure. See Crane v. Commissioner, 331 U.S. 1, 14 (1947); Chilingirian v. Commissioner, 918 F.2d 1251, 1254 (6th Cir. 1990), affg. T.C. Memo. 1986-463; Lamm v. Commissioner, supra; Aizawa v. Commissioner, supra at 200-201; Allan v. Commissioner, 86 T.C. 655, 661 (1986), affd. 856 F.2d 1169 (8th Cir. 1988); Lutz & Schramm Co. v. Commissioner, 1 T.C. 682, 689 (1943); *462 sec. 1.1001-2(a)(1), Income Tax Regs. This rule applies regardless whether the debt is recourse or nonrecourse. Commissioner v. Tufts, 461 U.S. 300, 308-309 (1983); Crane v. Commissioner, supra at 13-14; Chilingirian v. Commissioner, supra.
However, the extent to which an indebtedness is discharged as a result of a foreclosure sale, and thus the amount realized on such a sale, may depend on whether the taxpayer's liability is recourse or nonrecourse. If the liability is nonrecourse and the foreclosure sale discharges the entire indebtedness, the amount realized will include the entire nonrecourse liability. See Commissioner v. Tufts, supra; Crane v. Commissioner, supra; Lamm v. Commissioner, supra; sec. 1.1001-2(a)(1) and (4)(i), Income Tax Regs. If the debt is recourse, a foreclosure sale may or may not discharge the taxpayer's liability, depending on the amount for which the foreclosed property is sold. Aizawa v. Commissioner, supra. *463 In such a case, the amount realized by the taxpayer will generally equal the proceeds received from the foreclosure sale rather then the entire recourse liability. [9]Id.
*464 In the present case, the record does not disclose whether the loan from Citizens was made on a recourse basis or a nonrecourse basis. Although the parties submitted the mortgage agreement which is silent on that question, they did not submit the note evidencing the loan wherein a clause eliminating any personal liability presumably would be found. [10] On brief, respondent asserts that the loan was nonrecourse, referring the Court to the mortgage agreement. However, our review of the mortgage agreement found nothing to indicate that the loan from Citizens was nonrecourse. [11] Moreover, although the amount due on the loan at the time of the 1978 foreclosure is disclosed in the record, there is nothing in the record indicating the amount of proceeds received from the foreclosure sale. *465 Because the record does not disclose whether the loan from Citizens was recourse or nonrecourse or, if recourse, the amount of proceeds received from the foreclosure sale, we are unable to ascertain the extent to which the loan from Citizens was discharged as a result of that foreclosure sale. [12] Thus, we cannot determine from the instant record the amount realized on that sale. See Aizawa v. Commissioner, 99 T.C. at 200-201. We are therefore unable to decide whether the 1978 foreclosure sale resulted in a gain or a loss. Accordingly, we conclude that respondent has failed to carry her burden of proving that petitioner had a gain on the 1978 foreclosure. *466 3. 1982 Loss from Alleged Cancellation of a Contract for Deed
Petitioner asserts on brief that he was purchasing under a contract for deed certain property located at 1419 West Linden Street (Linden property) from Franklin and that Franklin cancelled the contract in 1982. Petitioner claims that he made principal payments under the contract for deed totaling $ 12,870.67. Petitioner concludes that, since respondent has allowed petitioner 60 percent of the real estate taxes, insurance, and interest as a business expense for the Linden property, he is entitled to an ordinary loss in the amount of $ 7,722.41 (60 percent of $ 12,870.67). No such loss was claimed by petitioner on his return. There is no evidence in the record supporting petitioner's allegations that he was purchasing the Linden property under a contract for deed, that Franklin canceled the contract, or that petitioner made principal payments totaling $ 12,870.67. Although such facts, if true, could easily have been stipulated or established by documentary evidence, neither course was followed. We are not required to accept, and we do not accept, petitioner's factual assertions made on brief and not otherwise *467 supported by the record. Rule 143(b); Webb v. Commissioner, 67 T.C. at 1017. Accordingly, we conclude that petitioner has failed to satisfy his burden of proving that he is entitled to a loss for 1982 on the alleged cancellation of a contract for deed. 4. Alleged Net Operating Loss Carryovers
Petitioner contends that he is entitled to carry forward certain net operating losses (NOL's) allegedly incurred by FAB between 1970 and 1977 and allegedly incurred by WE between 1974 and 1977 (corporate NOL's). Petitioner did not claim a net operating loss (NOL) deduction on any of his returns for the years at issue. In arguing that he is entitled to an NOL deduction for the corporate NOL's, petitioner asserts on brief (1) that, in his criminal trial for income tax evasion, the court declared petitioner to be the alter ego of FAB and WE for the period 1978 through 1980 and (2) that petitioner conducted FAB and WE in the same manner during the years 1976 and 1977. [13] Petitioner contends that he therefore is entitled to carry forward the corporate NOL's to the years at issue. *468 The Court is not required to, and does not, accept petitioner's self-serving and unsupported statement made in his brief that he "conducted the two corporations in the same manner during the years 1976 and 1977 as the District Court determined he did in the years" 1978 through 1980. Rule 143(b); Webb v. Commissioner, supra. The state of the record here does not permit us to accept petitioner's argument that FAB and WE were his alter egos for any of the years before 1978 and therefore fall within the narrow exception to the doctrine established by Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Accordingly, we conclude that petitioner has failed to satisfy his burden of proving that he is entitled to carry forward the losses reported by FAB and WE to any of the years at issue. Even assuming arguendo that petitioner had proven that FAB and WE were his alter egos for years before 1978, he still has not established on the instant record that he may carry forward losses reported by FAB and WE prior to 1978 to any of the years at issue. Section 172 allows an NOL deduction for the taxable year in an amount *469 equal to the NOL carried back to the taxable year and the NOL carried forward to the taxable year. An NOL is defined as the excess of deductions over gross income for a particular taxable year, with certain modifications. Sec. 172(c) and (d). Section 172(b) provides that an NOL generally is first carried back to the three preceding taxable years and, if unabsorbed by income for those years, then carried forward. [14]
The only evidence in the record regarding the income and expenses of FAB or WE for the *470 years prior to 1978 is the parties' stipulation that FAB and WE filed tax returns showing income or (losses) in the following amounts for the following years: Year
FAB
WE 1970
$ (3,046.13) $ --  1971
(605.38)
--
1972
(3,774.64)
--
1973
3,430.11 --
1974
(10,288.59)
(555.88)
1975
3,460.63 (3,398.90)
1976
(21,353.01)
(23,666.94)
1977
17,168.08 (698.77)
A tax return signed under penalty of perjury and filed with the Internal Revenue Service is merely a statement of a taxpayer's position as to the items reported therein. It does not establish that the return as filed is correct. [15] See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). The Court is thus unable to conclude that FAB or WE actually incurred any of the losses reported on their respective returns. *471 The record is also devoid of evidence regarding FAB's income and expenses for years prior to 1970, WE's income and expenses for years prior to 1974, and petitioner's income and expenses for years prior to 1978. Thus, even if it were shown that FAB and WE did have corporate NOL's equal to the amounts they reported on their returns for the years 1970 through 1977 and 1974 through 1977, respectively, and that petitioner was the alter ego of FAB and WE for each of those years, petitioner has still failed to show that any such NOL's were not absorbed prior to the years at issue. [16]
Therefore, on the present record, petitioner has not established that he is entitled to carry forward the corporate NOL's reported by FAB and WE to any of the years at issue. 5. Additions to Tax for Fraud
Respondent *472 determined that petitioner is liable for the additions to tax fraud under section 6653(b) for the years 1978 through 1981 and under section 6653(b)(1) and (2) for the years 1982 and 1983. To establish fraud, respondent must prove by clear and convincing evidence that (1) an underpayment exists for the taxable year, and (2) petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. [17]Scallen v. Commissioner, 877 F.2d 1364, 1369 (8th Cir. 1989), affg. T.C. Memo. 1987-412; Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). *473 The parties entered into the following stipulation regarding the additions to tax for fraud: 16. Petitioner concedes that the civil fraud penalty under I.R.C. Section 6653(b) is applicable to the deficiencies in income tax for taxable years 1978, 1979, 1980 and 1981, and further agrees that the civil fraud penalty under I.R.C. Sections 6653(b)(1) and (b)(2) is applicable to the deficiencies in income tax for taxable years 1982 and 1983.
The above-quoted stipulation, read literally, appears to concede both of the requirements for fraud, namely, the existence of an underpayment (which in this case is the amount of the deficiency, sec. 6653(c)(1)) and the presence of the requisite fraudulent intent. However, for the reasons stated below, we believe that the stipulation was intended by the parties to concede only that any deficiency and thus any underpayment ultimately determined to exist for any of the years at issue was the result of petitioner's fraudulent intent and was not intended to concede that there was a deficiency and thus an underpayment of tax for any such year. The interpretation of a stipulation is determined primarily by ascertaining the intent of the parties. *474 Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986). It is clear from the record in this case that, when the parties entered into the above-quoted stipulation relating to the additions to tax for fraud, they did not intend to agree that there was a deficiency and therefore an underpayment of tax for any of the years at issue. For example, the document in which that stipulation appears makes it clear that the parties had not agreed at the time they signed the document on the amounts of both income and expenses for any of the years at issue and that therefore they could not have been in agreement at that time that there was an underpayment of tax for any such year. In addition, at a hearing before the Court, which was held in November 1989 -- approximately 7-1/2 months before the stipulation relating to the additions to tax for fraud was agreed to, respondent's counsel stated: Mr. Wicker, I understood yesterday that you had agreed to concede fraud for all six years and * * * that the only issue that would be left in dispute would be the amount of income and expenses for the six-year period.
Finally, the parties ultimately stipulated in May *475 1992 that petitioner's expenses exceeded his gross income for each of the years 1982 and 1983. On the present record, we conclude that, when the parties entered into the stipulation with respect to the additions to tax for fraud, they did not intend to agree that there was an underpayment of tax for any of the years at issue. See Stamos v. Commissioner, supra. Accordingly, the additions to tax for fraud will be imposed only if there is an underpayment of tax for any of those years. Once respondent has established that there are receipts in excess of those reported on a taxpayer's return, the taxpayer bears the burden of coming forward with evidence of costs, expenses, and other factors that would lessen his liability. Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956); United States v. Bender, 218 F.2d 869, 871-872 (7th Cir. 1955); Avery v. Commissioner, T.C. Memo. 1993-344. The parties stipulated that petitioner had gross income in excess of that reported on his return for each of the years from 1978 through 1981. While the parties also stipulated *476 to certain expenses for each of those years, those expenses do not exceed the gross income for any of those years. Thus, under the parties' stipulations, there is an underpayment of tax for each of the years 1978 through 1981. Petitioner has failed to come forward with adequate evidence establishing his entitlement to additional deductions that would eliminate the underpayment of tax for any of those years. [18] Accordingly, the additions to tax for fraud will be imposed on the underpayment of tax resulting from the parties' stipulations for each of the years 1978 through 1981. With respect to 1982 and 1983, the parties' stipulations establish that petitioner's expenses exceeded his income for each of those years. Thus, there is no underpayment of tax for either 1982 or 1983. Consequently, we conclude that the additions to tax for fraud will not *477 be imposed for either of those years. 6. Additions to Tax for Substantial Understatement of Income Tax
Respondent determined that petitioner was liable for the addition to tax under section 6661 for the each of the years 1982 and 1983. Neither petitioner nor respondent addressed this issue on brief. Section 6661 imposes an addition to tax where the understatement of tax exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. It is clear from the parties' stipulations that there was no understatement of tax for 1982 or 1983. Accordingly, we conclude that petitioner is not liable for the addition to tax under section 6661 for either of those years. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue.↩
2. The record does not disclose whether the loan from Citizens was made on a recourse basis or a nonrecourse basis.↩
3. On November 15, 1976, Citizens discharged and released the Wagon Wheel Trail property from all claims and liens of and under the mortgage agreement.↩
4. The record does not disclose whether the 195 University Avenue property or the 980 Cherokee property was securing the loan on the date of foreclosure or whether, like the Wagon Wheel Trail property, those properties had previously been discharged and released from the mortgage agreement.↩
5. There is no evidence in the record regarding whether FAB filed tax returns prior to 1970 or whether WE filed tax returns prior to 1974.↩
6. This construction is consistent with the meaning of the word "supporting" as used in paragraph 25 of the second supplemental stipulation of facts when referring to certain documents. As used there, the word clearly does not mean that the documents there referenced, in fact, substantiated the item in question in that paragraph. We also note that, where the intent of the parties in a stipulation cannot be discerned because language in the stipulation is ambiguous, the language in question will be disregarded. In other words, the Court will not construe a stipulation to exist where the parties have not clearly set forth the substance of their agreement. Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986). Thus, assuming arguendo that, because the stipulation in question is ambiguous, it were not possible to discern the intent of the parties as to whether the documentation provided by petitioner actually substantiated the additional expenses he is claiming, we would disregard the ambiguous stipulation and would not construe it as conceding that those additional expenses have been substantiated. Id.↩
7. Petitioner conceded that the income and expenses of FAB and WE are to be considered his income and expenses for each of the years at issue. However, petitioner asserts on brief that, because the proceeds from the loan were received by FAB, any gain on the foreclosure would not be taxable to him. In light of our holding that respondent has failed to establish a gain on the foreclosure, we need not address the question of whether any such gain would be taxable to petitioner. We do note, however, that petitioner's contention that any gain from the 1978 foreclosure would be that of FAB, and not his gain, is at odds with his position that he, and not FAB, is entitled to a loss as a result of that foreclosure.↩
8. Without deciding the validity of petitioner's theory, we note that we have a serious question as to whether it has any basis in law.↩
9. In some cases, however, courts have concluded that the discharge of the portion of the taxpayer's recourse liability remaining after the foreclosure sale was so closely related to that sale that the amount realized included the discharge from the entire recourse liability. See Chilingirian v. Commissioner, 918 F.2d 1251 (6th Cir. 1990), affg. T.C. Memo. 1986-463; R. O'Dell & Sons Co. v. Commissioner, 169 F.2d 247 (3d Cir. 1948), affg. 8 T.C. 1165↩ (1947). Even if we were to assume arguendo that the loan from Citizens were recourse, no such conclusion could be made here because the record does not indicate whether or not any discharge of any portion of the loan remaining after the foreclosure sale was closely related to that sale. Indeed, there is nothing in the record to indicate whether the loan from Citizens was in fact discharged.
10. The existence of such a note is referred to in the mortgage agreement as well as the parties' stipulations.↩
11. Minn. Stat. sec. 580.23 (1978) provides that, where property is foreclosed by advertisement and the redemption period is six months, if the mortgagee or any other person purchases the property at the foreclosure sale, that person thereby waives his or her right to a deficiency judgment against the mortgagor. See National City Bank of Minneapolis v. Lundgren, 435 N.W.2d 588, 591 (Minn. Ct. App. 1989). If this provision were to apply here and if it were Citizens which purchased the properties at the foreclosure sale for the amount of the outstanding loan, petitioner's entire liability would have been discharged on that sale and the amount realized would equal the amount of the indebtedness outstanding at that time. See sec. 1.1001-2(a)(1), Income Tax Regs. However, we cannot determine on this record whether it was Citizens who purchased the properties at the foreclosure sale. We also cannot determine whether there was a six-month or a 12-month redemption period. See infra note 12. Nor can we ascertain from the record whether the foreclosure was conducted pursuant to Minn. Stat. chapter 580 (1978) (mortgage foreclosure by advertisement) or Minn. Stat. chapter 581↩ (1978) (mortgage foreclosure by action).
12. The record does not reveal whether any of the foreclosed properties was redeemed. Nor does the record indicate what redemption period was applicable after the foreclosure sale. Minn. Stat. sec. 580.23 (1978) provides that a mortgagor generally has six months to redeem property which was sold at a foreclosure sale. However, a 12-month redemption period applies if (1) the mortgage was executed prior to July 1, 1967; (2) the amount claimed to be due and owing as of the date of the notice of foreclosure sale is less than 66-2/3 percent of the original principal amount secured by the mortgage; or (3) the mortgaged premises, as of the date of the execution of the mortgage, exceeded 10 acres in size. Minn. Stat. sec. 580.23 (1978). Although it is clear from the record that neither of the first two circumstances applies, there is nothing in the record about the size of the foreclosed properties. We note that the parties stipulated that petitioner and Franklin "entered into an oral contract to redeem the FAB properties prior to April 7, 1979," which date is approximately 12 months from the time Citizens foreclosed on the properties. While this stipulation might be read to suggest that a 12-month redemption period applied, we find the stipulation too ambiguous to make that finding. See Stamos v. Commissioner, 87 T.C. at 1455. Thus, the Court is unable to determine whether a six-month or a 12-month redemption period was applicable. However, in light of our holding that both parties failed to satisfy their respective burden of proof, we are not required to decide what, if any, effect the applicable redemption period would have on the question of when any gain or loss on the foreclosure sale would have to be recognized. See R. O'Dell & Sons Co. v. Commissioner, supra↩.
13. Although petitioner claims that he was the alter ego of FAB and WE for the years 1976 and 1977, and not for years before 1976, it appears that he is nevertheless asserting that he is entitled to carry forward the corporate NOL's reported on the returns for FAB and WE prior to 1976.↩
14. Sec. 172(b)(1)(B)↩ provides, with some exceptions, that an NOL for any taxable year ending after December 31, 1955, shall be an NOL carryover to each of the five taxable years following the taxable year of such loss, and an NOL for any taxable year ending after December 31, 1975, shall be an NOL carryover to each of the 15 taxable years following the taxable year of the loss. Thus, in no event would petitioner be entitled to carry forward the losses reported by FAB on its returns for the years 1970 through 1972.
15. Petitioner's contention on brief that the returns for FAB and WE were audited by the Internal Revenue Service and unchanged after audit is not supported by the instant record. The exhibits petitioner attached to his reply brief in support of that contention are not evidence in this case. Rule 143(b); Webb v. Commissioner, 67 T.C. 1008, 1017↩ (1977).
16. Nor is there anything in the record indicating whether or not petitioner filed an election under sec. 172(b)(3)(C)↩ to relinquish the carryback period for any of the alleged NOL's for years ending after December 31, 1975.
17. Respondent pleaded in her answer that petitioner is collaterally estopped from denying the additions to tax for fraud for the years 1978 through 1980 because of petitioner's criminal conviction under section 7201. However, because respondent did not pursue this theory on brief, the Court considers it to have been abandoned. See Rybak v. Commissioner, 91 T.C. 524, 566↩ n.19 (1988).
18. An underpayment would exist for 1981 even if we had allowed petitioner to deduct for that year expenses in excess of those allowed by respondent, which we did not.↩